58969. BOOTH v. WATSON et al.

Carley, Judge.

Booth is a licensed real estate broker. He instituted the instant action against Stein and Watson, tenants in common of a parcel of land, for commissions alleged to be owing him for the sale of that property. Stein and Watson answered, denying the allegations. After discovery, Stein and Watson moved for summary judgment, supported by their affidavits. Booth submitted his affidavit in opposition and amended his complaint to include a count in quantum meruit and a count for conspiracy; he further moved to add Hardaway, the buyer of the property, as a party defendant to the conspiracy count. The motions came on for hearing and summary judgment was granted to Stein and Watson and the motion to add Hardaway as a defendant was denied. Booth appeals.

The evidence, construed against movants as it must be on summary judgment, reveals the following: On March 26, 1976, Stein told Booth that he and Watson had some property they wanted to sell for $525 an acre. Booth

responded that he thought he could sell the property and that he would offer it for that amount plus a ten percent commission. Stein gave Booth the plat and the deeds and told him to see what he could do. Booth asked if it were necessary for him to speak with Watson about the property. Stein replied: "No, I am giving you the listing and we want to sell the piece of property, we are tired of fooling with it, we want to sell it. We have tried to sell it before and we want to sell it now."

Booth did not contact Watson, the co-owner, with reference to his discussions with Stein. He did, however, begin contacting prospects and offering the property. Booth telephoned Hardaway on April 2, 1976, and informed him that the property was available at $585 an acre. Hardaway expressed interest but made no commitments to Booth. On April 5 Booth sent Hardaway a copy of the plat and a note confirming their conversation. After Booth's call, Hardaway began to figure the total purchase price of the property. The property was adjacent to his own, and he was familiar with it. Stein and Watson had permitted Hardaway to cut riding trails through the property and to have free access for horseback riding. Apparently Hardaway had been interested in the subject property for a number of years and had discussed purchasing the property on prior occasions with Watson who was a personal friend of his. Apparently there was a "gentleman's agreement" that Hardaway would be offered the property first in the event it was put up for sale. Booth's call started Hardaway thinking about the property again. Hardaway decided he could not afford the property individually but began to inquire of his friends about investing in the land. When he had obtained financial commitments, Hardaway telephoned his friend Watson to discuss the property. They reached an oral agreement and on April 7 Hardaway sent Watson a written breakdown of his offer with a cover letter containing the following: "How about talking to your partner [Stein] and get back in touch with me." Hardaway dealt exclusively with Watson, who had no actual knowledge that Stein had discussed listing the property with Booth. Watson discussed Hardaway's offer with Stein and after negotiations with Hardaway's repre-

sentatives, they agreed to sell the property for $563 an acre.

On April 14, Booth went to Stein's home to return the deeds and the plat and Stein told him that "something was working" on the property but gave no details. Booth sent Stein a letter on April 15 naming Hardaway as his prospect and stating that "in the event that anything adversely happens to your sale, I would like to continue to offer this property for sale to the above mentioned prospects and others." Booth then, for the first time, contacted Watson personally and told him that Stein had given him a "listing" on the property and that he had contacted several persons, including Hardaway. Booth told Watson that if the deal he and Stein had involving the property didn't go through he would like to continue to "work" those prospects. Watson informed Booth only that, "We have talked to Hardaway months ago." Booth, several days later, met with Hardaway and learned for the first time that Hardaway was in fact the purchaser.

1. On this evidence summary judgment as to Count 1, the claim for commissions, was properly granted to Watson. Watson, the co-tenant, had no dealings with Booth with regard to the alleged "listing" on the property given by Stein and no actual knowledge of Booth's activities in that regard until after he had accepted Hardaway's offer. Even assuming that Booth had a "listing" on the property from Stein, under these facts, Watson would not be obligated for any commission. "The general rule is that one tenant in common cannot bind his nonconsenting cotenants in any disposition of their undivided interest in the common property. [Cit.]" *Mueller Realty Co. v. Tucker Real Estate Co.*, 131 Ga. App. 54, 57 (205 SE2d 61) (1974). The only evidence that Stein was Watson's "agent" in dealing with Booth, is Booth's testimony that he was told by Stein there was no need to contact Watson with regard to the "listing" because "we," Stein and Watson, wanted to sell. Even assuming that such a statement by Stein could be construed as meaning that Stein was Watson's agent in dealing with Booth, it is clear that the agency argument fails in the instant case for two reasons: (1) declarations of the alleged agent, Stein, cannot prove his agency for the co-tenant, Watson; and (2)

the affidavits of Watson and Stein, the parties to the alleged agency, denying the existence of any agency relationship whereby Stein would secure Booth to "list" the property as broker for both owners, are uncontroverted save by this statement by Stein. *Oglesby v. Farmers Mut. Exchange,* 128 Ga. App. 387 (196 SE2d 674) (1973). Nor can it be said that Watson "ratified" any alleged listing agreement between Stein and Booth. The evidence shows that Booth did not make Watson aware of his endeavors until after Watson, Stein and Hardaway had negotiated a contract to sell the land. The evidence demonstrates that all Watson's efforts toward negotiating the sale were made in his capacity as the co-owner of the property, without actual knowledge of his co-tenant's dealings with Booth, and that he dealt with Hardaway as *his* "buyer" and not as Booth's. Compare *McKinnon & Eve v. Hope,* 118 Ga. 462 (45 SE 413) (1903); *Harris v. Underwood,* 208 Ga. 247, 250 (4a) (66 SE2d 332) (1951). The evidence thus eliminates any liability on Watson's part for commissions which might result from any "listing" of the property with Booth by Stein. Compare *Mueller Realty Co. v. Tucker Real Estate Co.,* 131 Ga. App. 54, supra. Summary judgment was properly granted to Watson on Count 1.

We turn to the question of whether summary judgment was properly granted to Stein. On the evidence, a finding that Stein had "listed" the property with Booth would be authorized. *Gresham v. Connally,* 114 Ga. 906 (41 SE 42) (1902). However, " '[i]n order for [Booth] to earn a commission on account of the sale of property, he must either have sold it or [have] been the procuring cause of the sale. The owner may sell the property, and if he does not use the broker's labor to help in the sale, he owes the broker nothing, but if a purchaser procured by the broker buys from the owner, even at a less price than that given the broker, the owner would be liable for the broker's commission if the broker's effort was the procuring cause of the sale. [Cits.]' " *Tidwell &c. Realty Co. v. Foster,* 123 Ga. App. 192 (1) (180 SE2d 259) (1971). Clearly, Booth did not "sell" the property, not having an exclusive listing and the deal having been negotiated solely between Hardaway and the owners. *Garfunkel v. Byck,* 28 Ga. App. 651 (113

SE 95) (1922); *Stone v. Reinhard,* 124 Ga. App. 355 (183 SE2d 601) (1971). Thus, the sole question is whether Booth's allegations that his telephone call and subsequent letter to Hardaway were the "procuring cause" of the sale have been pierced. Where, as here, the owner sells to a buyer who was initially approached by a broker, "[i]n determining whether or not [the] broker was the procuring cause of the sale where there is no exclusive contract to sell, it must be established that (1) the negotiations were still pending between the broker and the prospective purchaser; and (2) the owner was aware that the negotiations were still pending at the time he consummated the sale. [Cits.]" *Ideal Realty Co. v. Storch,* 124 Ga. App. 271, 272 (2) (183 SE2d 520) (1971).

The evidence is clear that Watson, the non-listing co-tenant, was approached by Hardaway, a friend with a known interest in the subject property, and that Watson was unaware that his co-tenant, Stein, had spoken to Booth with reference to the property or that Booth had spoken to Hardaway. *Palmer v. Malone,* 97 Ga. App. 666 (104 SE2d 131) (1958). Watson spoke to Stein concerning Hardaway's offer to purchase, and negotiations with Hardaway, as Watson's "prospect," were begun. These negotiations, carried on without actual knowledge of Booth's prior contact of Hardaway, culminated in a contract to purchase the land. However, neither Watson nor Stein were advised by Booth that he had previously contacted Hardaway until the letter of April 15, by which date a final agreement between Hardaway as purchaser and Watson and Stein as sellers had been reached. Thus, insofar as Stein is concerned, the evidence demonstrates that he entered into negotiations with the prospective purchaser, Hardaway, dealing with him as his co-tenant's customer and as one known to have shown previous interest in the property and that he entered into a preliminary sales contract without any actual knowledge of prior contact between Hardaway and Booth. Booth's previous contact with Hardaway was not brought to Stein's attention until after the agreement was reached. On this evidence, Booth's allegations that his efforts were the "procuring cause" of the sale have been pierced. *Pate v. Scott Real Estate Co.,* 132 Ga. App. 49, 51 (3) (207 SE2d

567) (1974) and cits. "[T]he controlling factor is not the ultimate deed, but the preliminary sales agreement, which in this case was entered into . . . prior to any notice of [Booth's] contention that [Hardaway] was his prospective customer. [Cits.]" *Pate v. Scott Real Estate Co.,* 132 Ga. App., supra, at 52. Nor does the evidence show that Booth had attempted in good faith but had failed, prior to the sale, to contact Watson concerning the "listing" of the property or to inform Stein of his contract with Hardaway. *Wilcox v. Wilcox,* 31 Ga. App. 486 (119 SE 445) (1923). Rather, the evidence demonstrates that the agreement as to terms of sale was reached by Stein prior to receipt of actual knowledge that Hardaway may have been Booth's prospect secured pursuant to any "listing" he may have been given. Summary judgment was properly granted to Stein. *Pate v. Scott Real Estate Co.,* supra; *Fields Realty & Ins. Co. v. Smith,* 123 Ga. App. 342 (180 SE2d 909) (1971); *Tidwell v. Hines,* 28 Ga. App. 806 (113 SE 48) (1922).

2. Booth urges that summary judgment was erroneously granted as to his Count 2, quantum meruit. We do not agree. "Ordinarily, when one renders services . . . to another, which the latter accepts, a promise is implied to pay the reasonable value thereof . . ." Code Ann. § 3-107. The only "service" Booth rendered was his single telephone call and follow-up letter to Hardaway. However, the evidence demonstrates that when Watson and Stein reached their agreement with Hardaway to sell the property they did so without any actual knowledge of these "services." They never "accepted" any services from Booth because they were never made aware of any services rendered to them, as owners of property for sale, until after they had reached an agreement to sell their property to a prospect who was known to them at that point only to be their own "buyer." Compare *Circle Mills, Inc. v. Millender,* 133 Ga. App. 811 (212 SE2d 467) (1975); *Sharp-Boylston Co. v. Lundeen,* 145 Ga. App. 672 (244 SE2d 622) (1978). In short, whether Booth's efforts were made pursuant to his "listing" agreement with Stein or not, those efforts have been shown by the evidence not to be the "procuring cause" of the sale by Watson and Stein, who lacked actual knowledge of Booth's efforts. *Doonan v. Ives & Krouse,* 73 Ga. 295 (2) (1885); *Ideal Realty Co. v.*

*Storch,* 124 Ga. App. 271, supra; *Pate v. Scott Real Estate Co.,* 132 Ga. App. 49, supra. The evidence thus demonstrating that Booth was not the procuring cause of the sale, summary judgment in favor of the sellers on the quantum meruit count was proper. Compare *First Nat. Bank &c. Co. v. McNatt,* 141 Ga. App. 6 (3) (232 SE2d 356) (1977).

3. Likewise, the demonstration that Booth was not the procuring cause of the sale under the facts of this case is fatal to his conspiracy count. *Tidwell &c. Realty Co. v. Foster,* 123 Ga. App. 192, 193 (3), supra. The allegations of "conspiracy" have been shown to be no more than Hardaway's failure to divulge to Watson that Booth had contacted him with regard to the property and that they in turn failed to divulge Booth's contact to Stein. However, the duty to divulge this information to Stein was Booth's. *Woodall v. McEachern,* 113 Ga. App. 213, 222 (147 SE2d 659) (1966). Thus the "conspiracy" is shown to be no more than a failure by Booth, through no fraudulent intent of the owners, to protect himself by obtaining Watson's agreement to the listing and by giving notice of his previous contact with Hardaway. *Tidwell v. Hines,* 28 Ga. App. 806, supra; *Kuniansky v. Williams,* 101 Ga. App. 678 (115 SE2d 204) (1960). Thus Stein and Watson "conspired" to do what they had a legal right to do—sell their property free of liability for commissions absent actual knowledge that the purchaser may have been procured by the broker. Compare *Clayton McLendon, Inc. v. Judge & Co.,* 142 Ga. App. 659 (236 SE2d 683) (1977). It was not error to grant summary judgment as to this count. *Parrish v. Ragsdale Realty Co.,* 135 Ga. App. 491, 495 (6) (218 SE2d 164) (1975). It follows that the denial of the motion to add Hardaway as a defendant was not erroneous. *Morris v. Park Newspapers,* 149 Ga. App. 674, 676 (4) (255 SE2d 131) (1979).

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

SUBMITTED NOVEMBER 6, 1979 — DECIDED
FEBRUARY 29, 1980 —

*Charles M. Evert, Marion M. Jones,* for appellant.
*Kenneth M. Henson,* for appellees.