70393. SOUTHERN GUARANTY INSURANCE COMPANY v. COTTON STATES MUTUAL INSURANCE COMPANY et al.
(335 SE2d 598)

BANKE, Chief Judge.

This is yet another case spawned by *Jones v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980), and *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983), involving the liability of motor vehicle insurers for optional personal injury protection under OCGA § 33-34-5 (former Code Ann. § 56-3404b), as it existed prior to its amendment by Ga. L. 1982, p. 1234, § 1.

In February of 1975, appellee Eloise Spivey contacted the Rains Insurance Agency (Rains) for the purpose of obtaining automobile insurance for herself and her husband, appellee Russell Vernon Spivey. In early March of 1975, appellant Southern Guaranty Insurance Company (Southern Guaranty) received from Rains an insurance application listing Mr. Spivey as the named insured. Also received from the Rains agency was an "optional coverage offer form." Both documents were dated February 25, 1975. The basic application was silent as to PIP coverage and was unsigned by the insured. The optional coverage form contained separate blocks for acceptance of "additional" PIP coverage in the amounts of $10,000, $25,000, or $50,000, as well as a block for complete rejection of any additional PIP coverage. It also contained a statement informing the insured that $5,000 in PIP coverage was automatically included in the policy. The block for rejection of "additional" PIP was checked, and a signature purporting to be that of Russell Vernon Spivey appeared on the form. Southern Guaranty subsequently issued an insurance policy covering the Spiveys, which purported to provide them no-fault benefits in the

minimum required amount of $5,000.

In October of 1979, Mrs. Spivey was injured in an automobile accident. The vehicle in which she was riding was insured by appellee Cotton States Mutual Insurance Company (Cotton States); and she received $10,000 in PIP benefits from that company for medical expenses and lost wages, the maximum payable under the terms of that policy. In October of 1981, the Spiveys tendered to Southern Guaranty an additional premium for optional PIP coverage; and in December of 1981, they demanded payment of $5,232.73, the amount by which Mrs. Spivey's medical expenses and lost wages resulting from the accident exceeded the amount recovered from Cotton States. Southern Guaranty denied liability; and in March of 1982, the Spiveys filed this action to recover the additional PIP benefits, as well as a statutory bad-faith penalty, attorney fees, and $250,000 in punitive damages.

In their original complaint, the Spiveys alleged that Southern Guaranty had failed to offer them the required optional coverage in the manner required by the statute. On July 21, 1983, in an affidavit submitted in opposition to a motion for summary judgment filed by Southern Guaranty, Mr. Spivey averred that he had neither signed the optional coverage form nor authorized anyone else to sign it for him. On that same date, the Spiveys amended their complaint to allege forgery and fraud on the part of Southern Guaranty with respect to the signing of the form and increased to $1,000,000 the amount of punitive damages sought. On May 11, 1984, Southern Guaranty deposed a handwriting analyst who had compared the signature on the optional coverage form with exemplars submitted by both Mr. and Mrs. Spivey. (This witness later testified at the trial that in his opinion neither Mr. nor Mrs. Spivey had signed the document.) On June 29, 1984, the Spiveys amended their complaint a second time, increasing the claim for punitive damages to $25,000,000. The case was tried in September of 1984.

Southern Guaranty filed a third-party complaint against Cotton States, alleging that Cotton States, as the primary insurer of the vehicle, would be required to indemnify it for any damages recovered by the Spiveys. Cotton States answered and moved for summary judgment; however, no hearing was held on the motion prior to trial. Cotton States made no appearance at the trial of the case, and at the close of the evidence the trial court granted Southern Guaranty's motion to strike Cotton States' defensive pleadings. A default judgment was subsequently entered against Cotton States for the amount of any recovery by the Spiveys. The case proceeded to trial, resulting in a directed verdict in favor of the Spiveys with regard to their claim for $5,232.73 in optional PIP benefits and a jury verdict awarding them a bad-faith penalty in the amount of $1,308.18, attorney fees in

the amount of $15,000, and punitive damages in the amount of $350,000. Subsequently, during the same term of court, Cotton States moved to set aside the default judgment entered against it, based on evidence that it had received no notice of the trial. The trial court granted these motions and also granted the motion for summary judgment previously filed by Cotton States on the third-party claim. Southern Guaranty appeals. *Held*:

1. The trial court did not err in setting aside the default judgment rendered against Cotton States, based on the evidence that it had received no notice of the trial. Accord *Goode v. O'Neal, Banks & Assoc.*, 165 Ga. App. 162 (300 SE2d 191) (1983); *Williams v. Calloway*, 171 Ga. App. 286 (1) (319 SE2d 500) (1984).

2. Because Southern Guaranty has not enumerated as error the trial court's subsequent grant of summary judgment to Cotton States, the correctness of that ruling is not before us for review. See generally *Farivar v. Yekta*, 166 Ga. App. 676 (305 SE2d 422) (1983); *Trowell v. Weston*, 154 Ga. App. 572 (2) (269 SE2d 74) (1980).

3. The trial court did not err in directing a verdict in favor of the Spiveys for the amount of optional PIP benefits claimed by them. Although their insurance application forms were submitted prior to March 1, 1975, the policy in question was not issued until after that date, and thus it was required to be preceded by a written acceptance or rejection of optional coverages, signed by the insured, pursuant to OCGA § 33-34-5 (b). Cf. *Lavender v. St. Paul Mercury Ins. Co.*, 169 Ga. App. 453 (313 SE2d 149) (1984); *St. Paul Fire &c. Ins. Co. v. Gasaway*, 165 Ga. App. 861 (303 SE2d 75) (1983). Appellant's reliance on *Georgia Farm Bureau Mut. Ins. Co. v. White* (Unpublished opinion, Case No. 69619, decided March 29, 1985) for the proposition that subsection (c) rather than (b) is applicable in this situation is without merit. In the first place, the decision in that case is unreported and therefore does not constitute a binding precedent. See Court of Appeals Rule 37 (b). Moreover, as in *Lavender v. St. Paul Mercury Ins. Co.*, supra, and *St. Paul Fire &c. Ins. Co. v. Gasaway*, supra, the policy at issue in that case was both applied for *and issued* prior to March 1, 1975.

As reiterated in *St. Paul Fire &c. Ins. Co. v. Nixon*, 252 Ga. 469, 470 (314 SE2d 215) (1984), the intent of OCGA § 33-34-5 (Code Ann. § 56-3404b) is " 'to ensure " 'that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing*.' " *Flewellen*, supra, 250 Ga. at 714.' " It is undisputed that neither Mr. nor Mrs. Spivey signed the document purporting to reject optional PIP coverage, and their denials that they authorized anyone else to sign the rejection form in their behalf are also unrefuted. Accordingly, the evidence is uncontroverted that the Spiveys did not

knowingly and in writing waive their right to obtain optional PIP coverage.

Southern Guaranty cites this court's holding in *Morris v. Fidelity & Cas. Co.*, 169 Ga. App. 883 (1) (315 SE2d 451) (1984), as authority for the proposition that it was entitled to rely on the signed rejection form regardless of whether the signature was authentic. However, in that case the independent agent who submitted the insured's application submitted it to the Georgia Assigned Risk Plan rather than directly to the insured. Consequently, he could not be deemed to have been acting as an agent of the insurer. In contrast, the evidence in the present case clearly shows that Rains occupied the status of a dual agent. A principal may be held responsible in contract for the misrepresentations of a dual agent upon which the other principal relied to his detriment. See *Home Materials v. Auto Owners Ins. Co.*, 250 Ga. 599 (2) (300 SE2d 139) (1983). Thus, any knowledge by the employees of the Rains Agency that the signature on the form was not authentic was imputable to Southern Guaranty for the purpose of establishing its liability on the policy.

4. Southern Guaranty contends that a verdict in its favor was demanded by evidence that the Spiveys failed to provide notice of the accident "as soon as practicable," as required by the terms of the policy. However, this contention was not raised in the trial court; hence, appellant is precluded from raising it on appeal. Accord *Salome v. First Nat. Bank*, 162 Ga. App. 394 (1) (291 SE2d 452) (1982).

5. Southern Guaranty also contends that the trial court erred in denying its motion for a directed verdict with regard to the appellees' claims for a bad faith penalty, attorney fees, and punitive damages.

Where PIP benefits are not paid within the requisite statutory period after receipt of proof of loss, the insurer has the burden of showing that its failure or refusal to pay was in good faith. See OCGA § 33-34-6. Although Southern Guaranty denied liability based on the ostensible written rejection of optional PIP, it was apprised during the deposition of Mr. Spivey on July 21, 1983 that the validity of the signature was questionable. In August of 1983, Southern Guaranty retained a handwriting analyst, who testified at trial that neither Mr. nor Mrs. Spivey had signed the form and that he had found no evidence to indicate that Mr. Rains or his employees had executed the signature. The witness also testified, however, that he was "reluctant to positively eliminate [Rains or his employees] based upon handwriting specimens executed some nine years after the writing in question." This analyst did not submit his final report to Southern Guaranty until August 27, 1984. However, as early as May 11, 1984, Southern Guaranty was apprised that a handwriting analyst retained by the Spiveys had determined that neither of them had signed the document. Under the circumstances, we cannot say that the evidence

demanded a verdict in favor of Southern Guaranty on the issue of good faith, which is ordinarily a matter for determination by the jury. See *Ga. Farm &c. Ins. Co. v. Matthews*, 149 Ga. App. 350 (2) (254 SE2d 413) (1979). It follows that the trial court did not err in refusing to direct a verdict in favor of Southern Guaranty with regard to the claims for a bad faith penalty, attorney fees, and punitive damages.

6. Southern Guaranty contends that the trial court erred in refusing to grant several requests to charge concerning the existence of an agency relationship between Rains and Spivey, on the one hand, and Rains and Southern Guaranty, on the other.

As noted in Division 3 of this opinion, the evidence clearly establishes that Rains was acting as a dual agent. Although a principal may be liable to the other principal in contract for the misrepresentations of a dual agent, neither principal is liable to the other for the tortious acts of the dual agent, "where the opposite principal is not in complicity with the agent or in no way participates in the tortious act." *Hodges v. Mayes*, 240 Ga. 643, 644 (242 SE2d 160) (1978). Although the evidence in this case would permit an inference that Southern Guaranty had no knowledge of the falsity of Mr. Spivey's purported signature at the time it denied the original claim for optional benefits, the trial court refused to grant Southern Guaranty's request to charge the jury that if it found Mr. Rains or one of his employees had forged the signature, Southern Guaranty could not be held liable to the Spiveys unless it was determined to have been in complicity with Rains or to have participated in the forgery. This refusal to charge on the part of the trial court must be considered harmful error with respect to the issue of Southern Guaranty's liability for a bad faith penalty, attorney fees and punitive damages. See generally *Georgia-Car. Brick &c. Co. v. Brown*, 153 Ga. App. 747 (3) (266 SE2d 531) (1980).

7. It is contended that the trial court erred in ruling that the optional coverage form itself was not "adequate" and in charging the jury to that effect. However, these contentions are rendered moot by our holding in Division 3 of this opinion to the effect that a directed verdict was proper based on the undisputed evidence that the document was not actually signed by the Spiveys or with their authority. The issue of bad faith on the part of the insurer must be determined, upon retrial, by a consideration of relevant principles of agency, as set forth in Division 6 of this opinion.

8. Southern Guaranty contends that the trial court erred in ruling that Mr. Rains could be considered an employee of Southern Guaranty for the purpose of cross-examination by the Spiveys. However, this contention presents nothing for review in view of the fact that no such cross-examination occurred.

9. The remaining enumerations of error are either rendered moot by the foregoing or are unlikely to recur upon retrial of the case. The

judgment is affirmed as to the award of optional PIP benefits but reversed as to the award of the bad faith penalty, punitive damages, and attorney fees. The orders of the trial court setting aside the default judgment entered against Cotton States and awarding summary judgment in favor of Cotton States are affirmed.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 3, 1985 —
REHEARINGS DENIED SEPTEMBER 24, 1985 —

*Terry A. Dillard, Robert M. Darroch*, for appellant.
*Rudolph J. Chambless, C. Edwin Rozier, J. Franklin Edenfield, Vernon L. Chambless*, for appellees.