73036, 73037. HARALSON v. POPE CHEVROLET, INC. et al.;
and vice versa.
(350 SE2d 255)

DEEN, Presiding Judge.

Mary Haralson (Haralson), appellant in Case No. 73036, brought an action in six counts against Pope Chevrolet, Inc., et al. (Pope), appellees in Case No. 73036 and appellants in Case No. 73037. Haralson appeals from the trial court's award of summary judgment to Pope on three of the six counts of her complaint. Pope has filed a cross-appeal enumerating as error the court's denial of summary judgment on the remaining three counts. We adopt the statement of facts set forth by the trial court's order entering final judgment as to Counts I, IV, and VI, these being the counts on which summary judgment was granted. Relevant portions of that statement of facts follow.

"On November 21, 1984, plaintiff Mary Haralson, accompanied by her daughter, Kathy Holland, purchased a 1984 Chevrolet Cavalier from defendant Pope Chevrolet. The automobile was for Holland's use. On the evening of November 21, plaintiff was presented a deal negotiated by her daughter and defendant Lou Harvey, a salesperson for Pope. Defendants Carlos Gutay and Reid Campbell actually completed the deal in Ms. Holland's absence.

"Plaintiff alleges that defendants agreed to sell her the 1984 Cavalier for $7,928.00 with the trade-in of her 1984 Oldsmobile. Plaintiff was to pay $300.00 down. Defendants were to allow her $500.00 on her trade-in and pay off the outstanding loan on the trade of $10,787.27.

The cash price of $7,928.00 was to be financed with no interest or payment until May 1985. Plaintiff alleges that she had intended to pay off the balance in March 1985, before the loan came due.

"A buyer's order was partially filled out by defendants and signed by plaintiff. This document was voided because of a problem with the computations, and plaintiff was asked to sign a new order form and several other documents in blank. Plaintiff alleges that she was assured the documents would be filled in later in accordance with the oral agreement outlined above. Plaintiff was tired and wanted to go home and watch television, so she signed. Plaintiff and her daughter left with the car.

"On or about December 11, plaintiff received her payment book in the mail. From her examination of the book, she understood that she owed not $7,928.00 but, with interest over the life of the loan, . . . [more than] $21,000.00. Plaintiff returned to defendant dealership and asked to see the papers she had signed. The documents were not produced. Plaintiff contacted her attorney, who returned with her and examined the documents, which revealed that the voided order plaintiff had signed showed an initial price of $7,928.00. With TekTar protection, transportation fee, processing fee, sales tax, and tag and title fees, the total price of the car was actually $8,600.93. Less the down payment of $300.00, plaintiff owed $8,300.93. However, because $10,786.34 was owed on the trade-in, an additional $2,486.34 was owed. Added back to the $8,300.00, this resulted in an unpaid balance of $10,787.27. Plaintiff claims this document was altered after she signed it, to reflect the negative trade-in and the higher cash balance. However, she has not raised this as an issue in this case.

"The new order, signed in blank, showed a cash price of $11,576.00 and, after adding the cost of processing, tax, and tag and title, a total of $11,600.43. Less the down payment and trade-in, the final balance was $10,787.27. According to the new order, plaintiff had also purchased credit life and disability insurance for $2,273.50 and a service agreement for $695.00. Thus $13,758.58 was financed for 60 months, for a total cost with interest of $21,148.80. On December 13, plaintiff returned the Cavalier and demanded rescission of the contract and return of her $300.00 and her trade-in. [Pope accepted the Cavalier but refused to return either the Oldsmobile or the $300.00.]

"This action was filed January 22, 1985. The complaint, as amended, is in six counts. Count I alleges conspiracy and fraud in inducing plaintiff to sign the documents in blank. Count II seeks refund of the $300.00 down payment, and Count III, return of the trade-in or its hire and damages, if any, to the [Oldsmobile]. Count IV alleges conspiracy and fraud in not filling in the blanks in accordance with the oral agreement. Count V alleges forgery of plaintiff's signature on a credit application and verification of insurance [form].

Count VI alleges fraud in charging a transportation fee of $290.00 when in fact the cost of transporting the car from a dealership in North Carolina was $83.00.

"Defendants answered, admitted the contract was rescinded, and denied the remaining allegations of the complaint. Defendants Harvey, Gutay, and Campbell also raised issues of sufficiency of service of process. Service was subsequently perfected on these defendants. [Harvey is no longer a party to this case.]

"Defendants moved for summary judgment as to all counts and filed their statement of material facts as to which there is no dispute, together with their evidence and brief. Plaintiff filed no response [but did file a request for oral argument and a motion for filing of discovery material, with supporting brief]." After a hearing, judgment was rendered as stated, supra, and the appeal and cross-appeal were filed. *Held*:

1. Of the six counts stated in the appellant's complaint, the trial court granted summary judgment for the appellees (cross-appellants) on three. Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56.

It appears from our scrutiny of the record that summary judgment was appropriate only on Count VI, which alleges fraud as to a transportation charge. Appellant asserted that she was defrauded in being charged $290 for transportation charges for the subject vehicle, when appellees had actually paid only $83 for its transportation. The trial judge correctly pointed out that there is no evidence that the transportation fee charged was fraudulent. According to the undisputed evidence, the charge was a flat fee which included the standard dealer destination fee and the fee for bringing the car from another dealer. Enumerations pertaining to this issue are without merit.

2. The trial court denied summary judgment on Count V, which alleged forgery of appellant's signature to two documents, and also claimed invasion of privacy. Some evidence was produced that appellant's signature may have been forged on at least one document. The court therefore acted properly in denying summary judgment as to the forgery allegation.

Appellant has apparently abandoned her allegation of invasion of privacy and on appeal pursues only that branch of Count V pertaining to forgery.[1]

---

[1] Appellant/cross-appellee does not argue invasion of privacy in the main appeal but devotes the last sentences of her reply brief in the cross-appeal to an allegation of invasion of privacy. The authorities cited there do not support her allegation, however. See *Kobeck v. Nabisco*, 166 Ga. App. 652 (305 SE2d 183) (1983); *Hines v. Columbus Bank & Trust*, 137 Ga. App. 268 (223 SE2d 468) (1976).

3. Counts I and IV, which allege fraud in the inducement to purchase the automobile and to sign the documents, as well as fraudulent alteration of the second invoice and sales contract, are closely related to Count V, and the trial court should have denied summary judgment. Count I alleges that appellant was fraudulently induced to purchase the new car. Count IV asserts that she was fraudulently induced to sign blank contracts. The trial judge dismissed these counts and granted summary judgment on the basis that appellant could have read the papers had she wanted, and that a party signing a contract without reading it is bound by the terms as filled in by the other party. *Butts v. Atlanta Fed. Savings Assn.*, 152 Ga. App. 40, 42 (262 SE2d 230) (1979). A person is not bound by the terms of a contract, however, if some type of fraud prevented him from reading the contract. *Malin v. Servisco*, 172 Ga. App. 418 (323 SE2d 278) (1984). " 'Knowingly passing as genuine a forged instrument is conclusive of the intent to defraud.' " *Taylor v. State*, 128 Ga. App. 13 (195 SE2d 294) (1973). Since it is possible that the signature on at least one of the documents was forged, these issues become factual questions for jury resolution. Because fraud is "in itself subtle," *Grainger v. Jackson*, 122 Ga. App. 123, 127 (176 SE2d 279) (1970), "it is for a jury to determine whether statements constitute misrepresentations and, if so, whether such misrepresentations are such as to be material to the transaction, as well as whether such misrepresentations induced the party alleged to be defrauded to pursue some course which he would not otherwise have pursued except for the fraud." *King v. Towns*, 102 Ga. App. 895, 900 (118 SE2d 121) (1960). Fraud having been established on the forgery count, jury consideration of the other instances of fraud alleged by appellant would seem appropriate. Haralson's apparent negligence in not reading the contract would not necessarily vitiate such a consideration. Summary judgment, then, should not have been granted as to Counts I and IV, and Haralson's enumerations concerning these issues are meritorious.

4. The trial court did not err in denying summary judgment on Counts II and III, which ask for the return of the appellant's $300 down payment and return of the traded Oldsmobile. As held in *Flatauer v. Goodman*, 84 Ga. App. 881, 886 (67 SE2d 794) (1951), it is not required that a formal agreement to rescind be made before, or even at the time, the property sold is delivered back to and accepted by the seller. Such agreement may be implied where the vendor accepts possession and thereafter exercises ownership and control of the property. *Sterchi Bros. Co. v. Harris*, 47 Ga. App. 772 (171 SE 457) (1933). Since appellant Haralson promptly returned the purchased automobile, and Pope accepted the vehicle and in fact resold it, there is evidence that the contract had been rescinded.

There is also support for the theory that the $300 down payment

and the traded automobile, or the equivalent thereof, should be returned to appellant. "[A] contract may be rescinded at the instance of the purchaser upon his promptly restoring or offering to restore the property received by virtue of the contract; and, upon this being done, the purchaser, without taking any independent proceeding in equity to rescind the contract, is entitled to recover the amount of the purchase price actually paid by him" — in the instant case, both the cash and the Oldsmobile or its cash equivalent. *Brown v. Techdata Corp.*, 238 Ga. 622, 626 (234 SE2d 787) (1977), citing *Cochran v. Meeks*, 25 Ga. App. 61 (102 SE 550) (1920). Haralson returned the Cavalier immediately upon receiving her payment book, from which she allegedly learned for the the first time of the allegedly altered terms of the contract. The trial court properly denied summary judgment on these two counts.

*Judgment in Case No. 73036 affirmed in part and reversed in part; judgment in Case No. 73037 affirmed in part and reversed in part. Benham and Beasley, JJ., concur.*

DECIDED OCTOBER 9, 1986 — REHEARINGS DENIED OCTOBER 20, 1986 AND OCTOBER 23, 1986 

*C. Alan Mullinax*, for appellant.
*Henry E. Scrudder, Jr.*, for appellees.