## 76872. EDWARDS-WARREN TIRE COMPANY v. COLE, SANFORD & WHITMIRE.
### (373 SE2d 83)

BIRDSONG, Chief Judge.

Appellant, Edwards-Warren Tire Company, brings this appeal from the grant of summary judgment to Cole, Sanford & Whitmire. William C. Warren III was a co-founder of appellant tire company in 1954, and has been the Chairman of the Board of that corporation since its inception. Warren is also the President of Cole, Sanford & Whitmire, an insurance brokerage firm, and although he has been with that firm for 33 years, he has been its president for only the last eight years. Edwards-Warren procured its liability insurance from Cole, and its operations were carried on in nine different states. Warren was aware of the law in Georgia and a majority of other states, that the workers' compensation statutes of the various states provide the exclusive remedy against an employer and employees of that employer for job-related injuries. See OCGA § 34-9-11. Warren was not aware that the law of Alabama did not follow this rule and permitted employees to sue other employees for job-related injuries.

Edwards-Warren sold off-the-road tires, new and retreads. Those type tires are used on mining and construction equipment. At the Drummond Coal Company in Alabama, a tire "blew up" and killed a Drummond employee and severely injured two Edwards-Warren employees. The injured Edwards-Warren employees brought suit against two other employees of Edwards-Warren, and it was discovered that the liability insurance policy for Edwards-Warren covered acts of their employees, but excluded coverage for suits by other employees. Edwards-Warren then filed this declaratory judgment action against Cole. The trial court granted summary judgment to Cole and this appeal followed. *Held*:

1. The trial court found that Warren had "serviced [appellant's] liability insurance needs since 1954 with very little input from others associated with plaintiff," and as the president of Cole "he ran the company and sold insurance." The court then concluded that Warren "acted as agent for both plaintiff and defendant with their knowledge and consent. Where an agent acts for adverse parties in a transaction with their knowledge and consent, neither principal is liable to the other for the tortious act of the agent in the absence of complicity by the principal. *Hodges v. Mayes*, 240 Ga. 643, 644, 242 SE2d 160." Appellant contends the trial court erred in its "sole and exclusive reli-

ance upon *Hodges. . . .*" We have found no error.

The evidence established that Warren, as Chairman of the Board for Edwards-Warren, made the exclusive decision to procure liability insurance from Cole, and that he did not discuss this subject with other members of the board or anyone else. As president of Cole, he issued Edwards-Warren a liability policy that he determined would provide adequate liability coverage. He admitted he was unaware that Alabama law permitted employees to sue other employees for job-related injuries, and that this was a mistake in judgment.

The relationship of principal and agent arises whenever one person, either expressly or by implication, authorizes a person to act for him or subsequently ratifies the act of the other. OCGA § 10-6-1. The principal is bound by the acts of his agent, acting within the scope of his authority. OCGA § 10-6-4; *Puckett v. Reese*, 203 Ga. 716, 725 (48 SE2d 297). At times courts have tended to equate "servant" with "agent," but these relationships are quite different. " 'At common law, and in all of the jurisdictions of this country (except in instances where changed by statute) the difference in concept is fundamental and substantial. Generally the servant performs work or labor for the master, sometimes skilled and sometimes not, while the agent, within the ambit of his authority, represents his principal in some business dealing. He is vested with authority, real or ostensible, to create obligations on behalf of his principal, bringing third parties into contractual relations with him . . . it has been generally said that agency relates to business transactions, while the work of a servant relates to manual service.' " *Headrick v. Fordham*, 154 Ga. App. 415, 416-417 (268 SE2d 753). The acts of Warren in procuring liability insurance for Edwards-Warren, and issuing liability insurance policies on behalf of Cole, had been occurring and recurring for more than 30 years (with the exception of three or four years when another insurer was tried). We find that Warren was an agent of both Cole and Edwards-Warren. Both principals were aware of the dual agency and neither principal repudiated such act of the dual agent.

" 'Contracts of dual agency are not void per se, but only so when the fact that the agent represented both parties was not known to each [principal].' " *Pope v. Harper*, 40 Ga. App. 573 (1) (150 SE 470). Knowledge and consent of both principals legalize the dual capacity of the agent. Id. "Where two or more principals employ the same agent, whether as a means of dealing with one another or to protect their common interests, one cannot charge the other not actually at fault with the misconduct of the common agent. The [agent] owes no more duty to one than to the other; each of the principals is under an equal duty to supervise the agent and to protect his own interest, and there is no reason why the misconduct of the agent should be imputed to one principal rather than to the other." Mechem, Law of

Agency 1717, § 2140. Our Supreme Court has adopted the approach espoused by Mechem. "It is generally recognized that where an agent represents two adverse parties in a transaction with the knowledge and consent of both, neither principal is liable to the other for the tortious acts of the agent so situated where the opposite principal is not in complicity with the agent or in no way participates in the tortious act. Another way of stating this same principle is that the misconduct of a dual agent by consent cannot be imputed to either of the principals who is not actually at fault. . . ." *Hodges*, supra at 644; accord *Southern &c. Ins. Co. v. Cotton States &c. Ins. Co.*, 176 Ga. App. 140 (6) (335 SE2d 598). Warren was unaware of the law of Alabama which permitted employees to sue other employees for job-related injuries. While this may have been negligence on the part of an insurer who held himself out as having a specialized knowledge in this field, no overt representation to the contrary was made by Warren or any other agent or employee of Cole to Edwards-Warren. Further, no inquiry or request was made on behalf of Edwards-Warren for this specific coverage, or for any type of liability coverage such as "full coverage" (see *Turner, Wood & Smith v. Reed*, 169 Ga. App. 213, 214 (311 SE2d 859)), nor was any examination made of Edwards-Warren's records by an agent of Cole professing to have special expertise to determine their liability coverage needs (*Wright Body Works v. Columbus &c. Ins. Agency*, 233 Ga. 268 (210 SE2d 801)). There is no evidence to indicate fault on the part of any employee or agent of either principal other than Warren.

This policy of liability insurance coverage was nothing more than the decision of Warren as Chairman of the Board for Edwards-Warren to purchase its liability insurance coverage from Cole, and a decision by Warren, as president of Cole, that this liability coverage was adequate for Edwards-Warren. Inherent in such determination by the same person is that Warren, as Chairman for Edwards-Warren, was aware of the contents of the policy and determined that it fulfilled the needs of his company, or he would never have accepted such policy and paid its premium. This enumeration is without merit.

2. Appellant argues that "a jury question exists as to the scope of the agencies W. Warren was fulfilling on behalf of both Edwards-Warren and Cole. . . ." We do not agree. There is no issue of material fact as to whether Warren had acted as agent for Edwards-Warren in the procurement of liability insurance for the past 33 years. Similarly, Warren as the president of Cole, could issue any type of insurance policy the agency was authorized to issue. The evidence does not indicate any issue as to the existence of the agency, or the extent of the authority of the highest officer in each business.

Appellant cites decisions that hold: "Questions regarding the existence of agency and the extent of the agent's authority are generally

for the trier of fact." *Renfroe v. Warren-Hawkins &c. Post No. 523,* 157 Ga. App. 614 (278 SE2d 414). The critical word is "[q]uestions" of existence of an agency, or the extent of the agent's authority. There was no "question" as to the existence of Warren's agency on behalf of both principals — for the past 33 years. Nor can there be any "question" as to the authority of the chief executive officer of each principal to accomplish the action he had been taking for years, with the knowledge, consent, and acceptance of both principals. The trial court did not err in determining the agency of Warren and the extent of his authority. *European Bakers v. Holman,* 177 Ga. App. 172 (2) (338 SE2d 702).

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 13, 1988.

Harry L. Cashin, Jr., Johann R. Manning, Jr., Raymond C. Mayer, for appellant.

Palmer H. Ansley, David A. Sapp, for appellee.