## 76719. CANAL INSURANCE COMPANY v. HARRISON.
### (376 SE2d 923)

BANKE, Presiding Judge.

Harrison sued Canal Insurance Company to recover casualty insurance benefits allegedly due him for damage to a truck. Canal denied liability, contending that the loss was not covered by the policy in question and that any contrary representations which may have been made to Harrison by the independent broker who had secured the policy on his behalf were not binding on the company due to the absence of any agency relationship between itself and that broker. The case was tried before a jury, which determined that Canal was liable for benefits in the amount of $5,650.85, plus a bad-faith penalty in the amount of $565 and attorney fees in the amount of $4,000. Canal appeals.

Harrison is a self-employed asphalt paving contractor who performs work in several states. In April of 1986, while working on a job in Lexington, South Carolina, he telephoned Wright (the president of Allied Assurance Agency located in Columbia, South Carolina) seeking casualty insurance coverage for two dump trucks used in his business. Allied was an independent broker which placed coverage with several insurance companies, including Canal. In response to Harrison's call, Wright obtained premium information from Canal, gave Harrison a quote, and mailed him a policy application. Harrison signed the application form (which he contends was uncompleted) and returned it to Wright, along with money orders for the down payment on the premium. Wright then mailed the completed application and down payment to Canal, which thereupon issued the policy in question and mailed it to Wright. The effective date shown on the policy was the date Canal received the completed application and premium payment from Wright.

Consistent with the language of the completed application and with the amount of the premium charged for the insurance, the policy did not provide coverage outside a radius of a hundred miles from Lexington, South Carolina, the location where Harrison had been working at the time he initiated contact with Wright. While the policy was in effect, one of the covered vehicles rolled down a hill at a job site in Chattanooga, Tennessee, and sustained the damage upon which the present claim is predicated. A copy of the policy had not as of that date been forwarded to Harrison. Harrison notified Wright of the mishap, and Wright notified Canal, which ultimately denied the claim on the ground that the accident had occurred outside the radius of coverage. *Held*:

1. "The 'authority of the agent' has been defined as the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him. The authority of the agent is the very essence of the principal and agent relationship; unless otherwise agreed, it includes only authority to act for the benefit of the principal, and the source of the authority is always the principal, and never the agent." 3 AmJur2d 574, Agency § 71. See generally OCGA § 10-6-1.

It is apparent without dispute from the evidence in this case that if Wright was acting as Canal's agent in this transaction, he was acting as a dual agent — i.e., as an agent for both parties. There is no suggestion either that Canal was aware of the preliminary discussions between Harrison and Wright regarding the coverage to be procured or that it was otherwise in complicity with Wright with respect to any misrepresentations he may have made to Harrison in this regard. It follows that Canal cannot be held liable to Harrison in tort for any negligence or wrongdoing on Wright's part. " 'It is generally recog-

nized that where an agent represents two adverse parties in a transaction with the knowledge and consent of both, neither principal is liable to the other for the tortious acts of the agent so situated where the opposite principal is not in complicity with the agent or in no way participates in the tortious act.' " *Home Materials v. Auto Owners Ins. Co.*, 250 Ga. 599, 602 (300 SE2d 139) (1983), citing *Hodges v. Mayes*, 240 Ga. 643, 644 (242 SE2d 160) (1978). Accord *Southern Guaranty Ins. Co. v. Cotton States Mut. Ins. Co.*, 176 Ga. App. 140, 144 (4) (335 SE2d 598) (1985).

However, "although the principal may be relieved of liability in tort, equity will not allow him to be relieved of responsibility for misrepresentations of the dual agent upon which the other principal relied to his detriment when the action is in contract. . . . The issue here is simply whether an insurer may clothe an agent with [actual or] apparent authority to enter into an insurance contract and then escape the usual effect of estoppel because the agent is also the agent of the insured party." *Home Materials v. Auto Owners Ins. Co.*, supra, 250 Ga. at 603. Thus, there remains the question of whether Canal may be held contractually liable to Harrison on the basis of Wright's alleged misrepresentations regarding the extent of coverage, on the theory that it had clothed Wright with actual or apparent authority to contract with him on its behalf.

"Independent insurance agents or brokers are generally considered the agent of the insured, not the insurer." *European Bakers v. Holman*, 177 Ga. App. 172, 173 (338 SE2d 702) (1985). There is no basis in the record before us for an inference that the situation was otherwise in the present case. Canal's assistant vice-president for claims testified unequivocally that the independent brokers, including Wright, through which it sold its policies were not empowered to bind coverage, that "the company is the only one that can bind the coverage." Consistent with that testimony, the record reflects that the coverage at issue in the present case did not become effective on the day that Wright mailed the application and premium payment to Canal but on the day Canal actually received the application and premium payment from him.

The only evidence offered by Harrison as support for a contrary finding — i.e., that Wright was authorized to enter into an insurance contract with him on Canal's behalf — consists of the following testimony by Wright: "When I first called Canal, I represented Jack Harrison. But after I consummated permission with Canal to quote this insurance and bind it, then I *may* have been representing Canal then." (Emphasis supplied.) Only if the existence of the alleged agency may otherwise be inferred from the circumstances, apparent relations and conduct of the parties surrounding the transaction may the declarations of the alleged agent be considered in establishing the

agency. See *Mullis v. Merit Fin. Co.*, 116 Ga. App. 582, 585 (158 SE2d 415) (1967); *Akridge v. Atlanta Journal Co.*, 56 Ga. App. 812, 815 (194 SE 590) (1937). Thus, in the face of Canal's unequivocal denial that Wright was empowered to act as its agent, and in the absence of any circumstantial evidence which could be said to conflict with this denial, we hold that Wright's equivocal, speculative statement that he "may" have been acting as Canal's agent is not sufficient to warrant an inference that he had actual authority to consummate the transaction — i.e., to bind the insurance company to coverage. Accord *Booth v. Watson*, 153 Ga. App. 672 (1), 674-5 (266 SE2d 326) (1980).

Similarly, there is no evidence in the present case from which it could be inferred that Canal, by course of dealing or otherwise, had cloaked Wright with the *appearance* of authority to bind coverage on its behalf. Harrison testified that he had never even heard of Canal until after the accident occurred and that up until then, he thought his coverage was with Wright or Wright's firm, Allied Assurance Agency. Thus there is no evidentiary basis whatever upon which the company could be considered bound by Wright's actions. We must accordingly conclude that Canal's liability is limited as a matter of law by the terms of the policy which it issued, with the result that the trial court erred in denying Canal's motion for directed verdict.

2. Harrison's motion for imposition of damages against Canal for filing a frivolous appeal is, perforce, denied.

*Judgment reversed. Birdsong, C. J., Deen, P. J., McMurray, P. J., Carley, Sognier, Pope, and Benham, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

I respectfully dissent.

The evidence is to be viewed most favorably toward Harrison, see *Eddie Parker Interests v. Booth*, 160 Ga. App. 15, 17 (285 SE2d 753) (1981).

1. Appellant claims that there was no evidence at trial that an agency relationship existed between it and Allied. It asserts that there was no evidence that its "conduct, representations, course of dealing, or knowledge of material facts" led Harrison to believe that such an agency relationship existed and that this, coupled with denial of agency by Canal and Allied, required a finding of no agency as a matter of law.

Contrary to appellant's assertion, the evidence does not conclusively show a denial by Allied of the agency relationship with Canal. In fact, in his deposition introduced at trial, Wright stated, when questioned about whom he represented in the transaction: "When I first called Canal, I represented Jack Harrison. But after I consummated permission with Canal to quote this insurance and bind it,

then I may have been representing Canal then." Also, when he stated there was no "explicit authority" he went on to explain that "It is on a case by case basis. In other words, we have no blanket authority from Canal." Thus, Wright did not unequivocally deny that he became the insurer's agent during the course of the transaction with plaintiff Harrison.

Furthermore, there was evidence that Canal accepted the actions of Wright on its behalf in the dealings with Harrison. The insurer accepted the premiums, issued the policies bearing its name as the insurer, sent its chosen adjuster to investigate the claim, and authorized repair pursuant to the estimate.

It is true that "[i]ndependent insurance agents or brokers are generally considered the agent of the insured, not the insurer. [Cit.] [But] [i]n many cases, the nature of the relationship between the parties [is] a jury question. See, e.g., *Wright Body Works v. Columbus &c. Ins. Agency*, 233 Ga. 268 (210 SE2d 801) (1974); *Stewart v. Boykin*, 165 Ga. App. 868 (303 SE2d 50) (1983); *Johnson v. Pennington Ins. Agency*, 148 Ga. App. 147 (251 SE2d 116) (1978)." *European Bakers v. Holman*, 177 Ga. App. 172, 173 (2) (338 SE2d 702) (1985).

Even the bare assertion of the existence of an agency relationship is a statement of fact when made by one of the purported parties to the relationship. *Salters v. Pugmire Lincoln-Mercury*, 124 Ga. App. 414 (184 SE2d 56) (1971); accord *Chrysler Credit Corp. v. Barnes*, 126 Ga. App. 444, 453 (191 SE2d 121) (1972); *Oglesby v. Farmers Mut.*, 128 Ga. App. 387, 389 (5) (196 SE2d 674) (1973); *Stone v. First Nat. Bank*, 159 Ga. App. 812, 814 (4) (285 SE2d 207) (1981). The assertion as well as the denial of agency by a party may not be disregarded by the trial court. *Commercial Union Ins. v. Taylor*, 169 Ga. App. 177, 180 (312 SE2d 177) (1983).

There was evidence that at a specific point in the transaction with Harrison, Canal gave Allied the authority. " 'An essential characteristic of an agent is his ability to bind his principal. [Cit.]' *General Warranty Corp. &c. v. Cameron-Hogan, Inc.*, 182 Ga. App. 434, 436 (356 SE2d 83) [1987]."

Inasmuch as there is some evidence of agency, the nature of the relationship between Allied and Canal became a question for the jury. *European Bakers*, supra.

The trial court properly refused to direct a verdict for the insurer on this issue, OCGA § 9-11-50 (a), and instead fully instructed the jury on the legal principles of agency applicable here.

2. Appellant contends that even if there was an agency relationship between itself and the broker, the policy did not provide coverage for the mishap because the policy contained exactly the same information, including particularly the geographical limitation, as the

application signed by the insured.

The problem with appellant's argument is twofold. Although the insurer maintained that the insurance application was filled in when it was sent to Harrison for his signature, including the one-hundred-mile limitation at issue, Harrison claimed that it was blank when he received it. While generally, "[i]f a writing is signed with blanks left to be filled in by the other party, the person signing is bound by it. [Cit.]" *Butts v. Atlanta Fed. Savings &c. Assn.*, 152 Ga. App. 40, 42 (262 SE2d 230) (1979), the person is not bound if some type of fraud prevented him from reading the document. *Haralson v. Pope Chevrolet*, 180 Ga. App. 650, 653 (3) (350 SE2d 255) (1986). It was for the jury to determine whether Wright's statements to Harrison regarding the coverage constituted misrepresentations, and if so, whether such misrepresentations induced Harrison " 'to pursue some course which he would not otherwise have pursued except for the fraud.' " Id.

In addition, the policies were not sent to Harrison until after the accident, so he had no notice prior to then of the restriction in the policies. If the jury determined that Harrison had given truthful answers to agent Wright's questions about the scope of his business and his insurance requirements and that the agent mistakenly or fraudulently recorded the requirements on the application, Harrison would not be charged with knowledge of the policies' contents. See *O'Kelly v. Southland Life Ins. Co.*, 167 Ga. App. 455 (305 SE2d 873) (1983), which applies these principles to life insurance.

" ' "In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, his principal. . . ." ' " Id. at 457.

3. Appellant contends that a finding of bad faith could not be authorized by the evidence.

" ' In an action to recover penalties and attorney's fees for the refusal of an insurer to pay a claim it must be shown that the refusal was in "bad faith," [OCGA § 33-4-6 . . . ] . . ., and the burden is on the insured to show that such refusal was made in bad faith. [Cits.] "Bad faith" . . . means "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." [Cits] . . . .' " *Progressive Cas. Ins. Co. v. Avery*, 165 Ga. App. 703 (1) (302 SE2d 605) (1983).

Construing the evidence described above in favor of the verdict, it supported a finding of misrepresentation on the part of the insurer's agent, which led to the unfounded refusal to comply with Harrison's demands for payment under his policy. " ' "(T)he proper rule is that the judgment [for bad faith penalties and attorney's fees]

should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." ' [Cit.]" Id. at 707 (1). Since the latter is not the case, the court did not err in denying a directed verdict to insurer on this issue.

DECIDED DECEMBER 5, 1988 —
REHEARING DENIED DECEMBER 20, 1988 — 

*Gray, Gilliland & Gold, John B. Austin,* for appellant.
*Nicholas E. Bakatsas,* for appellee.