691 S.E.2d 575 (2010)
BARRS
v.
ACREE, et al.
No. A10A0230.
Court of Appeals of Georgia.
February 25, 2010.
*577 Martin Snow, Thomas P. Allen III, Macon, for appellant.
Cowart & Perry, Markie E. Perry II, Daniel L. Studstill, Valdosta, for appellees.
MIKELL, Judge.
Earl Barrs brought this negligence action against Russell Acree and Acree's brother-in-law, Wesley Hall,[1] for property damage stemming from an incident on August 8, 2002, when a fire set on land adjacent to Barrs's burned out of control. Barrs alleged that Acree was liable for Hall's negligent acts under the principle of respondeat superior, because Hall was either his employee or agent when the acts occurred. Acree moved for summary judgment, contending that Acree Investments, Ltd. ("Acree Investments"), owned the land and also employed Hall. The trial court granted Acree's motion for summary judgment and also denied Barrs's motion to substitute Acree Investments as a party defendant for Acree. Barrs appeals both rulings. We affirm.
To prevail at summary judgment ..., the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. ... If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[2]
"We review de novo a trial court's grant or denial of summary judgment."[3] Viewed in favor of Barrs, the record shows that on August 8, 2002, the Georgia Forestry Commission issued a burn permit to Hall. According to Forestry Ranger-1 Donald Lee Tawzer, Jr., Hall called and asked for a burn permit "for Dr. Acree at Big Pond for burning ten acres of site prep work." The "Burning Authorization Log" lists "Russell Acree" as the landowner and "Wes Hall" as the person responsible; however, Tawzer could not state for certain that Hall told him he was burning the land for Russell Acree. When asked during his deposition who Hall said he was burning land for, Tawzer testified that, "[h]e could have said Russell [or] Dr. Acree Investments, but I've known Dr. Acree from the past, and I just put Dr. Acree." Several hours later, at approximately 10:42 a.m., Hall called Tawzer to advise that the fire had gotten out of control. When Tawzer arrived on the scene ten minutes later, he noticed that Hall had been burning brush piles and that the fire was heading toward Barrs's property because Hall had not cut proper fire breaks. Tawzer *578 used his tractor to cut fire breaks, and, although he was able to bring the fire under control by 11:40 a.m., it burned 4.86 acres of land owned by Acree Investments. According to Hall, Tawzer advised him that the fire was under control and told him he could leave to get some lunch. Tawzer disputes that he ever told Hall he could leave for lunch.
Approximately two hours after he had secured the scene and left, Tawzer received a call from the pilot of the Forestry Commission's airplane, reporting that a fire had started on Barrs's property, adjacent to the Acree property. Tawzer again reported to the scene, and he and several other units were able to bring the fire under control by that evening. According to Tawzer, 78.2 acres of woodland "burned on Barrs's property and [16.2] acres burned on McDevitt Farms's property." According to Tawzer, the fire was caused by wind getting in "Hall's burn" and causing it to jump the fire breaks.
Acree admitted that at one time, Hall had worked for him individually and been his employee on a farm that he personally owned. However, at the time of the fire, Hall was employed and paid a salary by Acree Investments. Acree Investments was started by Acree in 1995, and is run by his three children. Acree is listed as the company's registered agent and handles some of the company's affairs in a voluntary capacity; however, he is not an officer or employee of the company. As part of his duties for Acree Investments, Hall prepared the company's land for planting pine trees. According to Russell Acree, his children would determine which lands would be planted; Acree would then pass along that information to Hall on behalf of Acree Investments; and then Hall would prepare the land. Hall worked independently and Acree did not know that he was planning to request a burn permit on August 8, 2002. According to Acree, Hall had carried out many burns on the company's land.
Acree acknowledged that after the fire, he and Barrs exchanged several letters regarding Barrs's estimated losses. In those letters, Acree neither admitted liability nor denied Barrs's claim that the "fire started as a result of the burning of brush piles by your employee on land owned by you." However, Acree advised Barrs that he wanted to bring the matter to a close by "making Barrs whole." Acree's letters were on his personal stationery and signed by him individually. When the parties failed to resolve the matter, Barrs filed the instant action.
1. Barrs contends that the trial court erred in granting Acree's motion for summary judgment because there remain genuine issues of material fact as to whether Hall's conduct should be ascribed to Acree under OCGA § 51-2-1. We do not agree.
Although one may be liable for the acts of his employees or agents under OCGA § 51-2-2, to impose liability under respondeat superior, some relationship must exist between the principal and agent or employer and employee. For the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent. OCGA § 51-2-1(a).[4]
Apparently conceding that no employer/employee relationship existed between Hall and Acree, Barrs contends that Hall held himself out as Acree's agent. In support of this claim, Barrs points to the following facts: (1) Acree and Hall had a prior employment relationship; (2) Hall held himself out as Acree's agent by advising Tawzer that he was burning the land for Acree; (3) Acree ratified Hall's actions by sending written communications to Barrs "in which he fully acknowledged what had occurred, purported to defend the conduct of `the persons doing the burning' while in no way [disassociating] himself therewith, and spoke constantly in the first person while failing entirely to suggest anyone else's responsibility or involvement"; and (4) Acree waited until after Barrs filed suit to identify Acree Investments as the proper party.
"The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him *579 or subsequently ratifies the acts of another in his behalf."[5] "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."[6] In order to show actual agency, the purported principal must assume the right to control the time, manner, and method of the purported agent's work.[7] There is no evidence in the record to establish that an actual agency relationship existed between Acree and Hall. The evidence shows that Hall was employed by Acree Investments and Barrs has presented nothing to dispute this evidence.[8] Moreover, while Acree instructed Hall to clear the land, there is no evidence that Acree, who was visiting Atlanta at the time of the fire, had the right to control the time and manner of the burn. Quite the contrary, Acree specifically testified that Hall worked independently; that he did not know Hall was planning to request a burn permit on August 8, 2002; and that it was "left [to Hall] to decide when he was going to do things and how he was going to do [them]." While Acree, on behalf of Acree Investments, told Hall which lands to "site prep," Acree never instructed Hall on how to burn the property or cut fire breaks.[9]
Barrs also cannot show agency by implication. Although Barrs argues that Hall held himself out as Acree's agent when securing the burn permit, the record is devoid of evidence to support this assertion. Tawzer merely assumed that the burn permit was for Acree and could not say definitively whether Hall stated that he was conducting the burn for Russell Acree or Acree Investments. Neither can an agency relationship be implied from the fact that Russell Acree previously employed Hall at his private farm. Barrs cites no authority, and our research reveals none, holding that an implied agency relationship can be established by proof of a past employment relationship between the parties.
We also reject Barrs's claim of agency by ratification based on Acree's post-fire communications with Barrs and his "glaring failure until suit was filed to identify [Acree Investments as] the true `principal.'" "[A] party may express regret for the conduct of another and offer to pay for any resulting damages without ratifying that person's acts such that an agency relationship is created."[10] Finally, while a presumption of ratification may arise from mere silence or acquiescence,[11] under the circumstances here, we fail to see how Acree's delay in identifying Acree Investments as Hall's employer and/or the proper defendant is evidence of an agency relationship by ratification.
2. Barrs next contends that the trial court abused its discretion when it denied his motion to substitute Acree Investments. We disagree. As previously mentioned, the incident at issue occurred on August 8, 2002. Barrs's original complaint was filed on April 13, 2004, and Acree and Hall were served the next day. Approximately two months later, on June 28, 2004, Acree served Barrs with an answer to Barrs's first interrogatories, stating that he was not a proper party to the action, did not own the adjacent land, and *580 was not involved in the fire incident. Acree answered that "Acree Investments, LLC," which owned the property, was the proper party defendant and that service would be acknowledged by Acree Investment's attorney. Five years later, and three years after the statute of limitation ran,[12] Barrs filed a motion to substitute "Acree Investments, Ltd.," as a party defendant, for Acree.
OCGA § 9-11-15(a) allows a party to amend his pleading as a matter of right at any time before the entry of a pretrial order. However, when a party wishes to add or drop a party by amendment, "leave of court must first be sought and obtained pursuant to OCGA § 9-11-21."[13] However, under the facts of this case, the addition of a party was authorized under OCGA § 9-11-15(c) only if Barrs could show that (1) the amended claim against the new defendant arose out of the same facts and circumstances as the original complaint; (2) the new defendant had sufficient notice of the institution of the suit; and (3) the new defendant knew or should have known that, but for a mistake concerning his identity as a proper party defendant, the action would have been brought against him.[14] Additionally, in determining whether to allow an amendment to add a party, the trial court may consider "whether the new [party] will be prejudiced thereby and whether the movant has some excuse or justification for having failed to name and serve the new [party] previously."[15]
In this case, Barrs was aware of Acree Investments's existence and its potential liability for almost five years. At the hearing on the motion for summary judgment, counsel for Barrs blamed substitutions of counsel for the delayed filing as well as Acree's confusing and misleading interrogatory responses; counsel argued that although Acree consistently answered that he was not the proper party, he never divulged the proper party, and when he did, the designation was incorrect, Acree Investments, LLC, instead of Acree Investments, Ltd.[16] Counsel further attempted to justify the delayed filing by pointing out evidence in the record of letters Acree wrote to Barrs on his personal stationery, denying any liability, but offering to reimburse Barrs for his losses. Obviously, the trial court discounted these excuses, finding instead that Barrs was aware of Acree Investments's existence and potential claims against it, as early as June 28, 2004. "The determination of whether a party should be added to a lawsuit lies within the discretion of the trial court, and that determination will not be disturbed on appeal absent a showing of abuse."[17] Given that Barrs was aware of Acree Investments and the potential claims against it for five years, it cannot be said that the trial court abused its discretion in denying the motion.[18]
*581 3. In light of our holding in Divisions 1 and 2, we need not consider Barrs's remaining enumerations of error; namely, that the trial court's grant of summary judgment should be reversed because Acree was responsible for Hall's per se violations of Georgia's laws governing arson and prescribed burns.
Judgment affirmed.
SMITH, P.J., and ADAMS, J., concur.
NOTES
[1] Hall died in 2006.
[2] (Citations omitted; emphasis in original.) Lau's Corp. v. Haskins, 261 Ga. 491, 405 S.E.2d 474 (1991).
[3] (Punctuation and footnote omitted.) Dozier Crane & etc., v. Gibson, 284 Ga.App. 496, 497, 644 S.E.2d 333 (2007).
[4] (Punctuation omitted.) Gaskins v. Gaona, 209 Ga.App. 322, 323(2), 433 S.E.2d 408 (1993).
[5] OCGA § 10-6-1.
[6] (Citation and punctuation omitted.) Webb v. Day, 273 Ga.App. 491, 492(1), 615 S.E.2d 570 (2005).
[7] Dix v. Shadeed, 261 Ga.App. 145, 146(1), 581 S.E.2d 747 (2003).
[8] See Withrow Timber Co. v. Blackburn, 244 Ga. 549, 551, 261 S.E.2d 361 (1979) ("the bare denial of the existence of an agency relationship, when made by a purported party to the relationship, is a statement of fact sufficient to support a motion for summary judgment in an action based on the doctrine of respondeat superior") (citations omitted).
[9] See, e.g., Gaskins, supra (reversing denial of summary judgment to defendant in negligence action where there was no evidence he employed plaintiff, authorized him to act in his behalf, or had any right to control his activities).
[10] Ellis v. Fuller, 282 Ga.App. 307, 311(2), 638 S.E.2d 433 (2006), citing Basinger v. Huff, 98 Ga.App. 288, 105 S.E.2d 362 (1958).
[11] See Medley v. Boomershine Pontiac-GMC Truck, 214 Ga.App. 795, 798-799(4), 449 S.E.2d 128 (1994).
[12] OCGA § 9-3-30(a).
[13] (Citations omitted.) Horne v. Carswell, 167 Ga.App. 229, 230, 306 S.E.2d 94 (1983).
[14] Cobb v. Stephens, 186 Ga.App. 648, 649-650, 368 S.E.2d 341 (1988).
[15] (Punctuation and footnote omitted.) Ellison v. Hill, 288 Ga.App. 415, 418(2), 654 S.E.2d 158 (2007). See also Riding v. Ellis, 297 Ga.App. 740, 742-743(1), 678 S.E.2d 178 (2009); Hall v. Scott USA, 198 Ga.App. 197, 198-199(1), 400 S.E.2d 700 (1990). Compare Horne, supra at 231, 306 S.E.2d 94.
[16] Counsel's claim is misleading and disingenuous. Acree divulged the name of the proper party less than three months after Barrs filed this action. And although the company designation was erroneous, a simple search of the Georgia Secretary of State's website, http://www.sos.ga. gov/corporations/, would have revealed that Acree Investments is not a limited liability company.
[17] (Punctuation and footnote omitted.) Ellison, supra.
[18] See, e.g., Ellison, supra (denial of motion to add three of four potential defendants affirmed where the plaintiff was aware of the parties and the potential claims against them for at least seventeen months); Maitlen v. Derst, 178 Ga. App. 305, 307, 342 S.E.2d 777 (1986) (denial of motion to amend complaint and add party plaintiff affirmed where suit had been pending and active for over seven years and the potential plaintiff knew of its existence). Compare Miller v. Fulton County, 258 Ga. 882, 883(2), 375 S.E.2d 864 (1989) (denial of husband's motion to substitute his wife, the legal owner of their home, as plaintiff, reversed where record reflected that when the husband discovered the wife had been inadvertently omitted, he moved promptly to correct the omission).