### A06A1380. ELLIS v. FULLER.
(638 SE2d 433)

RUFFIN, Chief Judge.

Thomas Ellis ("Ellis") sued Glen Fuller ("Fuller"), alleging that Fuller refused to release equipment belonging to Ellis that was housed in a building owned by Fuller and leased to Ellis's son,

Anthony. Fuller counterclaimed, alleging that he had a lien against the equipment because Ellis owed him rent for the building. After a bench trial, the trial court held that Fuller was entitled to recover the unpaid rent from Ellis because: (1) Anthony had been acting as Ellis's agent when he leased the building; and (2) Ellis ratified Anthony's actions by agreeing to be responsible for the unpaid rent. It also awarded Fuller attorney fees and costs. Ellis appeals and we reverse.

" 'The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of review applies where the appellate court determines that the issue was of law, not fact.' "[1] The evidence, viewed in a light favorable to the trial court's findings of fact,[2] shows that Fuller leased a manufacturing warehouse (the "warehouse") to "Anthony Ellis (Metal House Siding)." The written lease, which was drafted by Fuller, was signed "Anthony Ellis." Ellis did not sign the lease, and Fuller had no written agreement with him regarding the lease. Ellis had no ownership interest in the business referred to in the lease, Metal House Siding.

Ellis purchased some equipment with the intention of letting his son use it in the business. Ellis, Anthony, Fuller, and others were present at the warehouse when the equipment was delivered and installed, several weeks before the execution of the lease. Fuller testified that he believed Ellis was involved in the business.

Anthony ceased making rental payments on the warehouse and eventually abandoned it. Ellis sought to remove his machinery from the warehouse, and he and Fuller reached an agreement whereby he would provide certain items to Fuller in exchange for permission to remove the equipment. Fuller contends that Ellis agreed to provide him with two mini warehouse buildings in satisfaction of the rental payments owed; Ellis, however, claims that he agreed to give Fuller one mini warehouse building and some roofing — not in satisfaction of the rent, for which he did not believe he was obligated, but "just [as] a way to get my equipment out of there," "strictly as a business decision because I needed the machine." Ellis provided Fuller with roofing and the components for one building, but never provided the framing for the building because, he contends, Fuller changed their agreement by then demanding a second building.

Ellis eventually sued Fuller, seeking the return of his equipment, and Fuller counterclaimed, arguing that when Anthony leased the warehouse, he was either leasing it jointly with Ellis or acting as his agent, and asserting that, after the warehouse was abandoned by

[1] *Park v. Fortune Partner, Inc.*, 279 Ga. App. 268 (630 SE2d 871) (2006).

[2] See *Zhou v. LaGrange Academy*, 266 Ga. App. 445, 449 (1) (597 SE2d 522) (2004).

Anthony, Ellis agreed to be responsible for the outstanding rent. The trial court concluded as a matter of law that Anthony was acting as Ellis's agent when he signed the lease agreement, and that Ellis ratified Anthony's actions "by agreeing to be responsible for the outstanding rentals due and by agreeing to pay those rentals by providing to [Fuller] metal roofing panels and materials in settlement of the amounts due under the lease agreement." The trial court also found that Ellis "acted in bad faith, was stubbornly litigious, and caused [Fuller] unnecessary trouble and expense," and ordered him to pay Fuller's costs and attorney fees. The trial court denied Ellis's claim in trover for the return of his equipment.

1. Ellis argues that the trial court erred in concluding that Anthony was acting as his agent in leasing the warehouse from Fuller. "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf."[3] The agency relationship is thus created by the actions of the principal.[4]

In the present case, there is no written evidence of agency. Anthony signed the lease in his own name, on behalf of a company in which his father had no ownership interest.[5] Fuller testified that he believed Anthony represented his father, but the actions he cites as the basis for his belief are Anthony's statement that he would have to get his father's permission before leasing the building and Ellis's presence when the equipment was installed at the warehouse.[6] This is insufficient to create an agency relationship.[7] "Where the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he or she was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such agency exists."[8]

---

[3] OCGA § 10-6-1.

[4] See *Augusta Surgical Center v. Walton & Heard Office Venture*, 235 Ga. App. 283, 286 (2) (508 SE2d 666) (1998).

[5] The lease contains a merger clause stating that it "constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties." See, e.g., *Fountainhead Dev. Corp. v. Dailey*, 263 Ga. App. 677, 680 (588 SE2d 768) (2003).

[6] Fuller also argues that the presence at the warehouse of bills of lading addressed to Ellis suggests that he was a participant in the business. However, Fuller did not discover these until after Anthony had ceased to pay rent. Thus, they cannot have been the basis for Fuller's belief at the time the lease was executed that Anthony was signing it as Ellis's agent.

[7] See *Shivers v. Barton & Ludwig, Inc.*, 164 Ga. App. 490, 491 (296 SE2d 749) (1982).

[8] (Punctuation omitted.) *First Nat. Bank of Gainesville v. Alvin Worley & Sons, Inc.*, 221 Ga. App. 820, 821 (2) (472 SE2d 568) (1996).

Moreover, even if Anthony were acting as Ellis's agent, Fuller prepared the written lease and did not list Ellis as a lessee or make any reference to him or to Anthony as his agent. Our Supreme Court has held that

> if at the time of the sale, the seller knows, not only the person who is nominally dealing with him is not principal but agent, and also knows who the principal really is, and, notwithstanding all the knowledge, chooses to make the agent his debtor, dealing with him and him alone, the seller must be taken to have abandoned his recourse against the principal, and cannot afterwards, upon failure of the agent, turn round and charge the principal, having once made his election at the time when he had the power of choosing between the one and the other.[9]

Because Fuller contracted with Anthony in his individual capacity, the trial court erred in concluding that Anthony was acting as Ellis's agent.[10]

2. Ellis next contends that the trial court erred in concluding as a matter of law that he ratified Anthony's actions by agreeing to satisfy the debt to Fuller by providing him with metal roofing panels and materials for a building. " 'Ratification may be made as to either the act of an agent in excess of his or her authority or the act of one who purports to be an agent but is really not.' "[11] Ratification occurs when a principal "know[s] of the agent's unauthorized act and, with full knowledge of all the material facts, accept[s] and retain[s] the benefits of the unauthorized act."[12]

The parties agree that Ellis and Fuller reached an agreement whereby Ellis would provide Fuller with some materials in exchange for the return of his equipment. Viewing the evidence in a light favorable to the trial court's findings, as we must, this agreement was intended to satisfy the debt owed to Fuller for the lease of the warehouse. But there is no evidence that Ellis intended to accept and retain all the benefits of the lease.[13] The parties both contemplated that Ellis would remove his equipment and the warehouse would be re-leased by Fuller. There is no evidence that Ellis sought to operate

---

[9] (Punctuation omitted.) *Kingsberry Homes v. Findley*, 242 Ga. 362, 364 (249 SE2d 51) (1978).

[10] See *Fountainhead*, supra.

[11] *MacDonald v. Harris*, 265 Ga. App. 131, 133 (2) (593 SE2d 32) (2004).

[12] *Bresnahan v. Lighthouse Mission, Inc.*, 230 Ga. App. 389, 392 (2) (496 SE2d 351) (1998).

[13] See *Holy Fellowship Church of God in Christ v. Brittain*, 240 Ga. App. 436, 438 (2) (523 SE2d 93) (1999).

a business out of the warehouse or retain its use for the remainder of the lease period.[14] And a party may express regret for the conduct of another and offer to pay for any resulting damages without ratifying that person's acts such that an agency relationship is created.[15] Under these circumstances, the trial court erred in concluding as a matter of law that Ellis ratified the lease by his agreement with Fuller.

3. Given our holdings in Divisions 1 and 2, we conclude that the trial court erred in finding as a matter of law that Fuller was entitled to recover the sum due on the lease from him and in awarding Fuller attorney fees pursuant to OCGA § 13-6-11.[16]

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 7, 2006.

*David D. Gottlieb*, for appellant.
*John R. Emmett*, for appellee.

---

[14] The lease was for two years beginning February 1, 2004. Anthony abandoned the building in March or April 2005. Ellis and Fuller reached their agreement in June 2005.

[15] See *Basinger v. Huff*, 98 Ga. App. 288 (105 SE2d 362) (1958).

[16] See *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 196 (2) (612 SE2d 47) (2005) (Under OCGA § 13-6-11, "a defendant is only entitled to recover fees . . . associated with prosecuting a successful counterclaim.").