**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A1062. COX v. MAYAN LAGOON ESTATES LIMITED et al.   AD-049
A12A1063. COX v. CONSTANTINO et al.

MCFADDEN, Judge.

Jewell "Judy" D. Cox sued Frank L. Constantino, Mayan Lagoon Estates, Ltd, ("Mayan"), Placencia Land and Development, Inc. ("Placencia"), and others,[1] for fraud, violation of the Georgia Securities Act of 1973, punitive damages, and attorney fees, among other claims, and upon Constantino's conviction for violation of the Georgia Rackteer Influenced and Corrupt Organization Act ("RICO"), § OCGA § 16-14-1 et seq., amended her complaint to assert a civil RICO claim. In Case No.

---

[1] These include Atrium Investment Partners, LLC, Exotic Caye Bank a/k/a Caye International Bank, Atrium Land Trust, Vision Capital Company, Belize Land and Development Company, World Vision Communications, Ltd., Plantation Marina and Yacht Club of Belize, Belize Land and Investment Trust, Globe Financial Solutions, LLC, and Atrium Global Partners.

A12A1062, Cox appeals the trial court's order granting Mayan's and Placencia's motion to dismiss. In Case No. A12A1063, Cox appeals from the trial court's denial of her motion for partial summary judgment. For the reasons set forth below, we reverse in Case No. A12A1062 and remand that case for further proceedings, and we affirm in part and reverse in part in Case No. A12A1063.

*Case No. A12A1062*

1. Mayan and Placencia moved to dismiss Cox's claims against them because, they argued, the trial court lacked personal jurisdiction and they were never served with the summons and complaint. They supported their motion to dismiss with the affidavits of Constantino and of Madeleine Lamont, a Director of Mayan and Placencia. Cox moved to strike these affidavits. Cox also attached to her motion to strike a copy of a proposed settlement agreement that Constantino's attorney had e-mailed to Cox's attorney. Mayan and Placencia moved to strike the e-mail and the proposed settlement agreement.

After hearing argument, the trial court ordered that Constantino's affidavit be stricken, refused to strike Lamont's affidavit, and granted Mayan's and Placencia's motion to strike the e-mail and proposed settlement agreement. The trial court found that there was no evidence that Constantino was an agent of Mayan or Placencia, and,

it noted, the parties were in agreement that Mayan and Placencia had not been personally served. Therefore, the trial court held, Mayan and Placencia had not been properly served. For that reason, the trial court dismissed Cox's action against Mayan and Placencia without prejudice.[2]

Absent an abuse of discretion, we will affirm a trial court's finding of insufficient service of process. See *Williams v. Wendland*, 283 Ga. App. 109 (640 SE2d 684) (2006). "Factual disputes regarding service are to be resolved by the trial court, and the court's findings will be upheld if there is any evidence to support them." Id. In this case, the parties agree that the sufficiency of service turns upon whether Constantino was Mayan's and Placencia's agent. See OCGA § 9-11-4 (e) (2).[3] Cox contends that the trial court erred in finding that there was no evidence of an agency or other business relationship that suggested Constantino could accept service of process on Mayan's and Placencia's behalf. She claims that the trial court

[2] Because it found lack of proper service, the trial court declined to consider Mayan's and Placencia's arguments concerning lack of personal jurisdiction.

[3] "If the action is against a foreign corporation or a nonresident individual, partnership, joint-stock company, or association, doing business and having a managing or other agent, cashier, or secretary within this state, [service shall be made by delivering the summons and complaint] to such agent, cashier, or secretary or to an agent designated for service of process." Id.

3

erred in refusing to strike Lamont's affidavit and in excluding evidence of Constantino's agency of Mayan and Placencia in the form of the settlement offer communicated by Constantino's counsel. As detailed below, we agree with Mayan and Placencia that the trial court did not err in refusing to strike the Lamont affidavit, but we find that the trial court erred in excluding the evidence of the settlement offer. Accordingly, we reverse the judgment granting the motion to dismiss and remand for the trial court to reconsider the motion in light of the settlement offer evidence.

(a) We initially consider Cox's argument that the trial court erred in refusing to strike Lamont's affidavit. We review the denial of a motion to strike an affidavit for abuse of discretion. *Cox v. U. S. Markets, Inc.*, 278 Ga. App. 287, 291 (3) (628 SE2d 701) (2006).

Lamont averred, among other things, that she is a director of both Placencia and Mayan, limited liability companies organized under the laws of Belize, and that

> [b]ased both upon [her] review of the books and records of Mayan and Placencia and [her] own personal knowledge, neither Frank Constantino, nor any entity with which he is affiliated, including [certain specified entities], is a member, shareholder, officer, director, employee, lender to, agent, contractor, party to a contract with, organizer of, representative of, holder of any beneficiary interest in, or affiliated in any way with, Mayan or Placencia.

4

Lamont similarly averred that Sandra Newhouse, Constantino's wife, was not an agent of Mayan or Placencia. In the second paragraph of her affidavit, Lamont represented that "[t]he statements that I have made herein are of my direct and personal knowledge, or based upon my review of books and records maintained in the ordinary course of business for which I am custodian."

Cox contends that Lamont's affidavit is not competent because it is based on business documents that do not appear in the record. See OCGA § 9-11-56 (e) ("[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith"); *Morgan v. Horton*, 308 Ga. App. 192, 197 (2) (707 SE2d 144) (2011) (expert's assertions regarding contents of a manual that did not appear in the record was without probative value); *Casey v. North Decatur Courtyards Condominium Assn.*, 213 Ga. App. 190, 191-192 (2) (444 SE2d 361) (1994) (where affidavit purported to establish the amount of a debt based on financial records, but the records were not attached to the affidavit, the affidavit did not provide competent evidence of the amount owed). Lamont's averments, however, were also based on her personal knowledge, and the trial court could conclude that Lamont's personal knowledge, given that she was a Director of Mayan and Placencia, was probative of whether Constantino was an agent of Mayan and Placencia. See

*Hayes v. Murray*, 252 Ga. 529, 530-531 (314 SE2d 885) (1984) (although affidavit was based in part on unattached medical record, opinions in affidavit were based in part on personal knowledge of the facts of the case and were sufficient to raise an issue of genuine fact); *Boatwright v. Eddings*, 171 Ga. App. 596 (320 SE2d 585) (1984) (accord). Accordingly, the trial court did not abuse its discretion in refusing to strike the affidavit.

(b) Cox also contends that the trial court erred in refusing to consider Constantino's settlement offer as admissible evidence of Constantino's agency of Mayan and Placencia. The evidence in question is an email message containing a settlement offer from an attorney then representing Constantino to an attorney representing Cox. The draft settlement agreement proposed to compromise a dispute between Cox and Constantino with regard to certain investment projects. Under the proposed settlement, one of the projects would merge with Mayan, Cox would agree "that the debt amount [on the projects] will be $2,762,000.00 and will be owed by Placencia Land and Development, Inc.," and Cox would release any and all claims against "Constantino . . ., [Placencia], . . . and all related or affiliate[d] entities."

The trial court found that the proposed settlement agreement fell "within the type of evidence prohibited from introduction under OCGA § 24-3-37" and *Nevitt v.*

6

*CMD Realty Inv. Fund IV*, 282 Ga. App. 533 (639 SE2d 336) (2006), and so struck the draft settlement agreement and accompanying e-mail. OCGA § 24-3-37 provides in applicable part that "admissions or propositions made with a view to a compromise are not proper evidence." This provision "was created in order to encourage settlements by letting a party which makes an admission or proposition with a view toward compromise rest assured that its good-faith settlement attempt will not later be used against it in court." *Nevitt*, supra, 282 Ga. App. at 535 (1) (a) (footnote and punctuation omitted). But as we noted in *Nevitt*, "[o]ne of the requisites for invocation of [this rule] is that the purpose of offering the evidence is to prove the validity or invalidity of the claim or its amount. Therefore, evidence offered for another purpose, such as showing bad faith, may be admissible." Id. at 537 (1) (c) (footnote omitted). See *Christie v. Rainmaster Irrigation, Inc.*, 299 Ga. App. 383, 390 (5) (682 SE2d 687) (2009) (accord). It follows that because Cox's proffer of the proposed settlement was to show Constantino's agency in opposition to a motion to dismiss, it was for a purpose unrelated to the validity of the underlying claim or its amount and thus was not prohibited by OCGA § 24-3-37 and *Nevitt*. The trial court erred in refusing to consider the evidence of the proposed settlement on those grounds.

7

This error requires reversal, because the settlement offer was evidence of Constantino's agency. The offer was evidence of an authorized representation, by Constantino through his then-attorney, that Constantino was authorized to speak for and bind Mayan and Placencia to the proposed settlement terms. The offer also was evidence of a representation by the attorney and his law firm that, as Contantino's agents, they were authorized to speak for and bind not only Constantino, but also the corporations. Subsequently that law firm has become counsel for Mayan and Placencia, while Constantino – along with other alterations in his status – has become pro se. Constantino's former attorney, meanwhile, has left the law firm, but remains a member in good standing of the State Bar of Georgia.

Mayan and Placencia argue that the settlement offer was not proof of Constantino's agency. "[P]roof of agency can be shown by circumstantial evidence, apparent relations, and conduct of the parties." *Nat. Property Owners Ins. Co. v. Wells*, 166 Ga. App. 281, 283 (2) (304 SE2d 458) (1983) (citations and punctuation omitted.) And "[s]ince an assertion or denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties, such a statement may not be disregarded by the trial court." Id. (citations and punctuation omitted.) Here, the evidence demonstrates an attempt by Constantino, through his

8

attorney, to offer Cox a settlement with terms affecting Mayan and Placencia. Contrary to the dissent's position, this evidence is more than merely a representation by the alleged agent regarding the agency; it also is a representation by Constantino's lawyer and that lawyer's firm that Constantino could bind the corporations to the settlement. Cf. *Canal Ins. Co. v. Harrison*, 189 Ga. App. 681, 684 (1) (376 SE2d 923) (1988) ("in the face of Canal's unequivocal denial that [the purported agent] was empowered to act as its agent, and in the absence of any circumstantial evidence which could be said to conflict with this denial, we hold that [the purported agent's] equivocal, speculative statement that he 'may' have been acting as Canal's agent is not sufficient to warrant an inference [of agency]"); *Holcomb v. Commercial Credit Svcs. Corp.*, 180 Ga. App. 451, 452 (1) (349 SE2d 523) (1986) (appellant conceded that there was no actual evidence of agency relationship, and appellant's assertion that such relationship existed was based solely on conjecture).

In disavowing the settlement offer, these corporations contend that when the attorney made the offer he exceeded or misrepresented his authority. A finder of fact may so conclude – after a trial at which the attorney would be free to defend himself and therefore subject to subpoena. See State Bar Rule 1.6 (b) (1) (iii). But it is emphatically not the province and duty of this court to so hold. Likewise, to the

9

extent that the law firm representing these corporations can be said to now be disavowing an admission it made itself on behalf of entities that would shortly thereafter become its clients, the law firm is in an awkward position, but we need not decide whether its position is more than awkward.

Instead, we must consider only whether the trial court's failure to consider the evidence of the settlement offer consituted reversible error. The settlement offer is evidence of Constantino's agency, which points to a conclusion that Constantino was the corporations' agent, compare *Tuggle v. Burpee*, 314 Ga. App. 833, 835 (726 SE2d 114) (2012) (circumstantial evidence is insufficient to overcome direct and positive evidence of a fact unless it points to a conclusion opposite that of direct evidence in the record), and creates a conflict with evidence cited by the corporations in support of their claim that Constantino was not their agent. We cannot say that the trial court's erroneous exclusion of this evidence from consideration in deciding the motion to dismiss was harmless. Consequently, we reverse the trial court's judgment granting the motion to dismiss, and we remand the case to the trial court to reconsider the motion in light of the evidence of the settlement offer.

*Case No. A12A1063*

2. Cox also appeals from the trial court's order denying her motion for partial summary judgment. She argues that Constantino's RICO conviction estopped him from asserting any defenses to Cox's civil RICO claim, and that the trial court therefore erred in her motion for partial summary judgment. We agree that the trial court erred in declining to grant Cox summary judgment in part as to Constantino's liability for Cox's civil RICO claim. The trial court did not err to the extent that it declined to enter partial summary judgment on the issue of damages and to the extent the trial court did not comply with Cox's request that it enter a default judgment against Constantino's corporate co-defendants.

Constantino was indicted for, among others things, violating RICO by endeavoring to acquire and maintain, directly and indirectly, an interest in and control of personal property and money through a pattern of racketeering activity. See OCGA § 16-14-4 (a). The alleged racketeering activity included theft by taking and violation of the Georgia Securities Act. Count One of the indictment alleged that Constantino victimized Cox through three "schemes" described as "The Caye Bank Stock Scheme," "The Plantation Villas Scheme," and "The Plantation Marina and Yacht

11

Club Scheme."[4] Following a jury trial, Constantino was convicted of the RICO violation charged in Count One of the indictment, among other crimes.

Cox amended her complaint and asserted as Count III a civil RICO claim against Constantino. She alleged that Constantino, by and associated with the corporate defendants, had engaged in a pattern of racketeering activity and that, among other things, she had suffered a loss and theft of money due to what Constantino told Cox (i) "was an investment in the stock of Caye Bank," (ii) "was an investment in 'the Plantation Villas' through the 'Belize Development Trust II Subscription Agreement,'" and (iii) "was an investment in 'the Plantation Marina and Yacht Club.'" Cox then moved for summary judgment on Count III of her complaint in light of Constantino's RICO conviction.

---

[4] The "Caye Bank Scheme," as alleged in the indictment, involved the purported sale by Constantino of $500,000 in Caye Bank stock to Cox without, inter alia, disclosing that the stock was not transferable. The indictment alleged that the "Plantations Villa Scheme" involved the purported sale by Constantino to Cox of $1,150,000 in units in the Belize Development Trust II, a security not properly registered in Georgia, for the purpose of purchasing and developing real property in Belize. And the indictment alleged that the "Plantation Marina and Yacht Club Scheme" involved the purported sale by Constantino to Cox, in violation of the Georgia securities laws, of $930,000 in interests in two entities through which Constantino was to invest in the Plantation Marina and Yacht Club. The indictment alleged that Constantino took at least some of the funds procured from Cox for each of these "schemes" for his own personal use or for the use of others.

12

Pursuant to OCGA § 16-14-6 (e),[5] "[a] conviction in any criminal proceeding under this chapter shall estop the defendant in any subsequent civil action or proceeding as to all matters proved in the criminal proceeding."[6] Estoppel may afford a proper basis for the grant of summary judgment. See, e. g., *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 488 (696 SE2d 667) (2010). In deciding a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (h).

(a) At the motion hearing, Constantino argued that it would be improper to grant summary judgment against him on the basis of his criminal conviction while his

[5] Constantino claims that OCGA § 16-14-6 (e) is unconstitutional, but he fails to show that this issue was either raised or ruled upon below. *Dupre v. Scappaticcio*, 244 Ga. 179 (259 SE2d 440) (1979).

[6] Although there do not appear to be any Georgia decisions applying OCGA § 16-14-6 (e), we note there are numerous federal opinions which apply collateral or judicial estoppel in the context of civil RICO cases. See, e. g., *Buchanan County, Va. v. Blankenship*, 496 F. Supp. 2d 715 (W. D. Va. 2007); *Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016 (9th Cir. 2001); *County of Oakland v. City of Detroit*, 776 F. Supp. 1211 (E. D. Mich. 1991).

13

appeal from that conviction was still pending.[7] The general rule in Georgia is that "a judgment sought to be used as a basis for the application of the doctrine of res judicata or collateral estoppel must be a final judgment. In Georgia a judgment is suspended when an appeal is entered within the time allowed. And the judgment is not final as long as there is a right to appellate review." *Greene v. Transport Ins. Co.*, 169 Ga. App. 504, 506 (3) (313 SE2d 761) (1984) (citation and punctuation omitted).[8] Notwithstanding these general principles, OCGA § 16-14-6 (e) applies to a very specific occurrence, "[a] conviction in any criminal proceeding under this chapter . . .," and we must presume the legislature intended what the statutory language imports, which is that the estoppel contemplated thereby applies upon entry of a judgment of conviction, and not some other time. "Well-established principles of statutory construction require that the literal meaning of the words of a statute must be followed unless the result is an absurdity, contradiction, or such an inconvenience that it is clear that the legislature must have intended something else." *Effingham*

---

[7] The trial court may have agreed with Constantino inasmuch as he characterized the pending criminal appeal as "a big elephant in the room."

[8] Georgia is, apparently, among the minority of states that treat a lower court judgment on appeal as not final for purposes of collateral estoppel or res judicata. *Campbell v. Lake Hallowell Homeowners Assoc.*, 852 A.2d 1029, 1039-40 (Md. Ct. Spec. App. 2004).

*County Bd. of Tax Assessors v. Samwilka, Inc.*, 278 Ga. App. 521, 523 (629 SE2d 501) (2006) (citation omitted). OCGA § 16-14-6 (e) is not absurd to the extent it imbues a RICO conviction, though on appeal, with a preclusive effect for purposes of a subsequent civil proceeding.[9] It follows that the pendency of Constantino's criminal appeal afforded no basis for the trial court to deny Cox's motion for summary judgment.[10]

(b) Cox contends that by virtue of the preclusive effects of Georgia's RICO statute that Constantino is estopped from contesting the merits of her civil RICO claim. Because Georgia's RICO statute is modeled upon the federal RICO statute, we find federal authority to be persuasive in addressing this issue. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 806 (1) (500 SE2d 591) (1998) (citation and punctuation omitted). And in assessing the preclusive effect of a prior criminal proceeding on a subsequent civil RICO claim, the federal courts have looked to principles of collateral estoppel, or issue preclusion. See, e. g., *Buchanan County*,

---

[9] Such would be consistent with the federal law. See *County of Cook v. Lynch*, 560 F. Supp. 136, 138 n. 1 (N. D. Ill. 1982) ("the law is well settled that a judgment is final for purposes of collateral estoppel even if an appeal is pending").

[10] We note that Constantino's convictions were subsequently affirmed in an unpublished opinion of this Court, and the Supreme Court of Georgia denied certiorari on April 24, 2012. Thus, Constantino's appeal is no longer pending.

supra, 496 F. Supp at 719; *County of Oakland*, 776 F. Supp. at 1215. "[A]ny facts clearly established and essential to a defendant's conviction under the criminal RICO statute should be precluded from relitigation in a civil suit that is based on the same underlying conduct." *Buchanan County*, supra, 496 F. Supp at 719.

See also *Broadfoot v. Aaron Rents*, 260 Ga. 836, 837 n. 2 (401 SE2d 257) (1991).

In this case, Cox shows that following a jury trial Constantino was convicted of RICO and a number of other crimes. The indictment specified that Constantino committed numerous acts of racketeering activity as predicate acts and the jury found, in some cases, that he was guilty of crimes corresponding to those acts, but the jury deadlocked on other crimes, and no guilty verdict was rendered on those charges. Cox presents a list of facts which she contends by virtue of the convictions have been proven as a matter of law and which, she argues, establish all the elements necessary for a judgment on her civil RICO claim.

"Any person who is injured by reason of any violation of Code Section 16-14-4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages." OCGA § 14-4-6 (c). In order to establish such a civil RICO claim, Cox is required to show by a preponderance of the evidence that Constantino violated the RICO statute, OCGA § 16-4-4, that she has suffered injury,

16

and that Constantino's violation of the RICO statute was the proximate cause of the injury. *Buchanan*, supra, 496 F. Supp. 2d at 718 (II); *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 431 (614 SE2d 758) (2005) (standard of proof is preponderance of the evidence); *Reaugh v. Inner Harbour Hosp.*, 214 Ga. App. 259, 265 (5) (c) (447 SE2d 617) (1994) (unlike the federal act, OCGA § 16-14-6 (c) does not limit injury to injuries to business or property). Further, "a private plaintiff who wants to recover under civil RICO must show some injury flowing from one or more predicate acts. A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act." *Maddox*, supra, 231 Ga. App. at 805 (1) (citation and punctuation omitted).

Applying the foregoing, Cox has shown that Constantino is estopped from denying the facts necessary for his conviction of certain offenses in the underlying criminal proceeding, namely the thefts by taking reflected in Counts Three,[11] Four,[12]

[11] To secure Constantino's conviction the State was required to show that "on and about the 5th day of March 2003, [Constantino] did unlawfully take . . . United States currency, in the approximate amount of [$50,000] but at least in an amount greater than [$500], the property of Judy Cox, then age 77, with the intent to deprive said owner of said property, in violation of OCGA § 16-8-2[.] Said United States

17

and Nine[13] of the indictment. These crimes correspond with predicate acts alleged to constitute Constantino's pattern of racketeering activity.[14] Constantino is also estopped from contending that he did not violate OCGA § 16-4-4 by reason of his conviction on Count One. That Cox was injured by predicate acts underlying the RICO conviction and, further, that Constantino's actions were the proximate cause of that injury, was established in the criminal proceeding by the facts necessary to

currency is further described as currency transferred by and from Judy Cox to Atrium Secure Annuity by First National Bank of Cherokee check no. 02 006695 dated March 5, 2003."

[12] To secure Constantino's conviction the State was required to show that "on and about the 11th day of March, 2003, [Constantino] did unlawfully take . . . United States Currency, in the approximate amount of [$450,000] but at least in an amount greater than [$500], the property of Judy Cox, then age 77, with the intent to deprive said owner of said property, in violation of OCGA § 16-8-2[.] Said United States currency is further described as currency transferred by and from Judy Cox to Atrium Investment Partners, Inc by wire transfer dated March 11, 2003 from First National Bank of Cherokee to Nevada First Bank.

[13] To secure Constantino's conviction the State was required to show that "on and about the 22nd day of May, 2002, [Constantino] did unlawfully take . . . United States currency, the exact amount which is not known to the Grand Jury, but which in any case exceeds [$500], from a currency transfer by and from Judy Cox to Belize Land Development Trust by First National Bank of Cherokee no. 02 005594 dated May 22, 2002, in the amount of [$650,000], in violation of OCGA § 16-8-2."

[14] In Count One, Constantino was alleged to have committed acts of racketeering activity, including thefts of Cox's property on March 5, 2003, March 11, 2003, and May 22, 2002.

18

prove Constantino's convictions for the thefts alleged in Counts Three, Four, and Nine of the indictment. Accordingly, Cox was entitled to summary judgment in part as to Constantino's liability on Count III of her complaint.

Cox also relies on facts necessary to establish Constantino's multiple violations of the Georgia Securities Act, OCGA § 10-5-1 et seq., reflected by his convictions on Count Two, Counts Seven and Eight, and Counts Fifteen through Seventeen of the indictment. We are unable to discern that the facts proven "by virtue of the conviction[s]," as Cox contends, necessarily show that Cox was injured by these predicate acts.[15] See, e. g., *County of Oakland*, supra, 776 F. Supp. at 1216 ("no issue of injury or extent of injury to the plaintiffs was ever litigated or decided in any previous proceeding. Therefore, plaintiffs must still establish that they suffered an injury and that such injury was causally linked to the" defendant's RICO activity); *Maddox*, supra, 231 Ga. App. at 806 (1) (plaintiff "must show that his injury flowed directly from the defendant's misrepresentations"). Thus, while Cox has shown that Constantino violated the Georgia Securities Act in multiple ways, and he is estopped from contesting his participation in such criminal activity, Cox has not shown that

---

[15] For example in order to prove Count Two, the State needed to show that Constantino omitted to state a material fact that stock in Caye International Bank was not transferable, in violation of then OCGA § 10-5-12 (2003) and 10-5-24 (2003).

19

Constantino would necessarily be estopped from contesting that he injured Cox by reason of his commission of those predicate acts.

Cox also contends that by virtue of Constantino's convictions for improper exploitation of an elderly person, OCGA § 30-5-8, that Constantino, through undue influence, deception, false representation, and false pretense, improperly exploited a person over the age of 65. Even though the jury found that the facts proven at Constantino's criminal trial established violations of OCGA § 30-5-8, the crimes do not correspond to the acts of racketeering activity alleged by the State, which were theft and violations of the Georgia Securities Act. Therefore, Cox cannot show that Constantino's convictions for improper exploitation of an elderly person established "some injury flowing from one or more predicate acts." *Maddox*, supra, 231 Ga. App. at 805 (1) (citation and punctuation omitted).

(c) Cox further contends that her damages were proven in the criminal proceedings. Specifically, Cox points to the restitution hearing, pursuant to which, she argues, the sentencing judge found by a preponderance of the evidence that she suffered damages in the amount of $2.5 million. Accordingly, Cox maintains, Constantino is estopped from claiming Cox was damaged in a lesser amount. Given that OCGA § 16-14-6 (c) provides for a cause of action for three times the actual

20

damages sustained, Cox further claims that she is entitled as a matter of law to a judgment against Constantino for not less than $7.5 million.

Notwithstanding Cox's characterization of the restitution proceedings, the sentencing court found "by the preponderance of the evidence that [Constantino] owes restitution in the amount of [$2.5 million]." The court then provided as a condition of Constantino's probation: "Restitution $1,000,000.00 instanter and $1,500,000 within 90 days of release." The sentencing court did not specify to whom the restitution would be paid, and, apparently, did not consider Cox to be the sole victim. For instance, the court ordered Constantino to "stay away from all victims in this case, including Judy and Beth Cox." Although Cox was the named victim in the crimes for which Constantino was convicted, a victim for purposes of restitution means, in pertinent part, "any . . . [n]atural person . . . suffering damages caused by an offender's unlawful act . . . ." OCGA § 17-14-2 (9). Thus, "a court may order an offender to make restitution to any third party who has incurred or will incur expenses as a result of his illegal acts." *Adams v. State*, 291 Ga. App. 681, 684 (3) (662 SE2d 782) (2008), disapproved on other grounds, *Turner v. State*, 312 Ga. App. 799, 804 (2) n. 15 (720 SE2d 264) (2011). In light of the foregoing, the trial court's finding by the preponderance of the evidence that Constantino pay restitution does not

necessarily correspond to a finding that Cox suffered damages in the amount of $2.5 million. See, e. g., *Morrison v. State*, 181 Ga. App. 440 (352 SE2d 622) (1987) (restitution is not synonymous with civil damages). Thus, to the extent Cox contended that she was entitled to a summary judgment that she had suffered actual damages in an amount no less than $2.5 million, the trial court did not err in denying her motion.

3. Last, Cox argues that the trial court erred in not entering judgment against corporate entities not represented by counsel. In the brief filed in support of her motion for summary judgment, Cox noted that certain corporate defendants had not been represented in court through counsel, and she argued that "should there be no appearance by counsel in opposition to" her motion for summary judgment, the trial court was required to enter a default judgment against those defendants.

As it has been succinctly put, "there is no such thing as a default summary judgment." *Milk v. Total Pay & HR Solutions*, 280 Ga. App. 449, 450-451 (634 SE2d 208) (2006) (citation and punctuation omitted). Rather, "[b]y failing to respond to a motion for summary judgment, a party merely waives his right to present evidence in opposition to the motion. It does not automatically follow that the motion should be granted." Id. at 451 (citation and punctuation omitted). Although Cox casts her argument in light of the rule that "a corporation . . . can be represented in a court of

22

record only by an attorney," *Temp-N-Around Med. Res. v. Avondale Joint Venture*, 248 Ga. App. 231 (546 SE2d 23) (2001), she nevertheless asked for an entry of a default judgment based upon the anticipated failure of the corporate defendants to validly respond to her summary judgment motion. It appears that there was no response by the corporate defendants to her motion, other than by Mayan and Placencia, but it does not follow that such failure to respond required entry of a default judgment against those corporate defendants, see *Milk*, supra, and the trial court did not err by declining to do so.

In sum, in Case No. A12A1062 the trial court erred in granting Mayan's and Placencia's motion to dismiss, and the court must consider the evidence of the settlement offer in deciding that motion on remand. In Case No. A12A1063, the trial court erred in denying Cox partial summary judgment as to Constantino's liability for Count III of the complaint. The trial court did not err in denying Cox's motion for summary judgment on the issue of damages, nor in declining to enter default judgment against the corporate co-defendants.

*Judgment reversed and case remanded with direction in Case No. A12A1062.*

*Judgment affirmed in part and reversed in part in Case No. A12A1063. Barnes, P.*

*J., Ray and Branch, JJ., concur.  Miller, P.J., Doyle, P.J., and Adams, J., concur in part and dissent in part.*

A12A1062. COX v. MAYAN LAGOON ESTATES LIMITED et al.

A12A1063. COX v. CONSTANTINO et al.


ADAMS, Judge., concurring in part and dissenting in part.

I concur fully with the majority in Case No. A12A1063. In Case No. A12A1062, I also agree with the majority that Cox's proffer of the proposed settlement to show Constantino's agency was not prohibited by OCGA § 24-3-37 and *Nevitt v. CMD Realty Inv. Fund IV*, 282 Ga. App. 533 (639 SE2d 336) (2006), and that the trial court's reasons for refusing to consider the settlement offer were erroneous. I believe, however, that the settlement offer is not evidence that Constantino was an agent of Mayan and Placencia and that the trial court's error was harmless. Accordingly, I dissent in part to the majority's decision in Case No. A12A1062.

Cox's claim is that the trial court erred in "excluding evidence of Constantino's agency" in the form of the settlement offer. An agency relationship "arises wherever

one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. "The agency relationship is thus created by the actions of the principal." *Ellis v. Fuller*, 282 Ga. App. 307, 309 (1) (638 SE2d 433) (2006) (footnote omitted). "Where the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he [or she] was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such agency exists." Id. (footnotes omitted). See *Holcomb v. Commercial Credit Svcs. Corp.*, 180 Ga. App. 451, 452 (1) (349 SE2d 523) (1986) (accord). Similarly, "[o]nly if the existence of the alleged agency may otherwise be inferred from the circumstances, apparent relations and conduct of the parties surrounding the transaction may the declarations of the alleged agent be considered in establishing the agency." *Canal Ins. Co. v. Harrison*, 189 Ga. App. 681, 683-684 (1) (376 SE2d 923) (1988) (citations omitted).

It might be inferred that Constantino, through his settlement proposal, was representing thereby that he had the authority to bind Mayan and Placencia to the terms of the deal, which contemplated a "merger" of a project with Mayan and assumption of a considerable amount of debt by Placencia. Cox argues that

2

Constantino's contention that he could bind Mayan and Placencia had strong corroboration because "[d]uring the time [Constantino's attorney] represented Constantino, he was employed by the same firm that now represents Mayan and Placencia." But according to Lamont neither Constantino's attorney, nor his law firm, had been retained by Mayan and Placencia at the time Constantino made the settlement offer to Cox. Lamont further averred that Constantino did not have any authority to represent Mayan or Plaencia with respect to the settlement offer, about which she had no knowledge.[1] As a rule, "circumstantial evidence is insufficient to overcome direct and positive evidence of the fact in question unless it points to a conclusion opposite that of the direct evidence." *Tuggle v. Burpee*, 314 Ga. App. 833, 835 (726 SE2d 114) (2012). Mayan's and Placencia's decision to hire Constantino's attorney's law firm might invite speculation that there was a relationship among Mayan, Placencia, and Constantino, but it is not more than speculation. The direct evidence, on the other hand, is that Mayan and Placencia had not retained Constantino's attorney or his firm when the settlement proposal was transmitted and that Constantino had no authority to represent Mayan and Placencia with regard to

---

[1] The Lamont averments referenced here were submitted by supplemental affidavit and were not the subject of Cox' motion to strike.

3

the settlement proposal. Accordingly, Cox points to nothing to corroborate the proposition that Constantino was an agent of Mayan and Placencia, and the inferences that could be drawn from Constantino's submission of the settlement proposal, without more, were not probative of whether he was the agent of Mayan and Placencia. See *Ellis*, supra. The trial court's error in finding the settlement agreement inadmissible under OCGA § 24-3-37 was harmless. I would accordingly affirm the trial court's grant of Mayan's and Placencia's motion to dismiss. For the foregoing reasons, I dissent in part to the majority's decision in Case No. A12A1062.

I am authorized to state that Presiding Judge Miller and Presiding Judge Doyle join in this opinion.