**FIFTH DIVISION
MCFADDEN, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 20, 2025**

# In the Court of Appeals of Georgia

A25A0095. WARNER v. ESPITIA et al.

HODGES, Judge.

In this post-divorce action, Jennifer Warner filed a civil Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act complaint against Krystal Kriewaldt and Jeffrey Espitia (collectively, "the defendants") claiming that they falsely accused her of being in arrears with her child support payments.[1] The Superior Court of Paulding County granted the defendants' motion to dismiss Warner's complaint, and Warner appeals, essentially arguing that her complaint satisfied the minimal pleading requirement to survive a motion to dismiss pursuant to OCGA § 9-

---

[1] Warner is Espitia's former spouse, and Kriewaldt is identified in the record as Espitia's fiancé.

11-12 (b) (6). Because we conclude that Warner's complaint far exceeds the scope of the Georgia RICO Act, we affirm the trial court's order dismissing the complaint.

Our standard of review is well settled:

Although a trial court's ruling on a motion to dismiss for failure to state a claim is subject to de novo review, we accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff. Ultimately, any doubts regarding the complaint must be construed in favor of the plaintiff.

(Citations and punctuation omitted.) *McLeod v. Costco Wholesale Corp.*, 369 Ga. App. 717, 718 (894 SE2d 442) (2023). So viewed, the record demonstrates that Warner and Espitia divorced in 2009 and that the couple's two children resided with Espitia and his fiancé, Kriewaldt. A January 2023 child support consent order, entered by the Superior Court of Cobb County (the "Cobb County court"), required Warner to pay, initially, $450 per month to Espitia with an increase to $550 per month in November 2023. The child support order also noted that Warner was in arrears in the amount of $7,500 as of July 1, 2022 and that she was required to pay Espitia an additional $100 per month until the arrearage was satisfied in full.

In June 2023, Espitia, with Kriewaldt's assistance, filed a petition for contempt in the Cobb County court, alleging that Warner was in arrears in the amount of $11,774.58.[2] At an October 25, 2023 hearing on Espitia's petition for contempt, Espitia admitted that he was "ignorant" as to whether Warner was in arrears or the amount she was in arrears, but added that he did not "intentionally falsely swear" because he "truly believed" Kriewaldt's calculation of the alleged arrearage and mistakenly thought that other expenses, in addition to child support, were in arrears.[3] As a result, Espitia characterized the filings as "100 percent a mistake."

After the hearing, the Cobb County court entered an order that declined to hold Warner in contempt and, instead, awarded attorney fees to Warner against Espitia. As part of its order, the Cobb County court concluded that Espitia's contempt petition had "such a complete absence of any justiciable issue of law or fact . . . that it could

---

[2] During the same general time period, Espitia also filed a notice with the Georgia Department of Human Services asserting that Warner was in arrears; in turn, the Department notified Warner of its intent to suspend her driver's license unless she satisfied the arrearage by one of several options. Warner requested a hearing before the Office of State Administrative Hearings, and Espitia filed a second notice with the Department in October 2023. The parties have not pointed us to any resolution of these notices contained in the record.

[3] Kriewaldt did not attend the hearing.

not reasonably be believed that a court would find [Warner] in contempt. . . ." The Cobb County court further found that

> the claims in [Espitia's] Petition were substantially frivolous, substantially groundless, and substantially vexatious. The [c]ourt [found] that the evidence showed the instant case was initiated with the intention to harass and intimidate [Warner]. [Espitia] testified under oath that he did not know the disputed child support payments, which had been adjudicated by [a] prior Consent Final Order, were res judicata. He further testified that [Kriewaldt] calculated the alleged arrearages in the Petition. The [c]ourt [did] not find these arguments credible or persuasive if true.

Thereafter, armed with the Cobb County court's order, Warner filed the present complaint alleging causes of action for filing false documents, violations of the Georgia RICO Act, punitive damages, and attorney fees. The defendants moved to dismiss Warner's complaint, arguing that Warner's claim was barred by res judicata and because: (1) it violated the RICO Act's purpose and codified public policy; (2) Warner did not incur any damages; and (3) Warner's true cause of action, if any, was for abusive litigation, and she failed to satisfy the statutory prerequisites to maintain such an action.

Following a hearing, the trial court granted the defendants' motion to dismiss. Specifically, the trial court found that the predicate acts underlying Warner's RICO claim — filing of false statements and writings (OCGA § 16-10-20) and filing false documents (OCGA § 16-10-20.1) — were "specific intent crimes and require that a person *knowingly* and *willfully* file documents and that the person *knows* the documents contain false statements of material fact." (Emphasis in original.) The court further concluded that the pleadings from the Cobb County action demonstrated only that Espitia "filed what he believed to be true and accurate documents with correct information at the time he filed the documents[,]" such that "there could not be any fact introduced to establish that [the defendants] knowingly made and filed false documents, writings, or statements." As a result, the trial court concluded that, despite the Cobb County court's finding that Espitia's arguments were not "credible or persuasive if true[,]" the predicate acts had not been shown and that Warner's RICO action failed. The trial court added that the RICO Act, "while liberally construed, was not intended for use in civil matters of this scope." This appeal followed.

5

In her sole enumeration of error, Warner argues that she sufficiently pled a claim for a Georgia RICO Act violation and that the trial court erred in granting the defendants' motion to dismiss on the basis that she failed to establish the defendants' specific intent to commit the predicate offenses. Pretermitting any potential credibility issues or factual conflicts, we conclude that Warner's complaint exceeds the scope of the Georgia RICO Act, such that the allegations of her complaint confirm that she would not be entitled to relief. Therefore, we affirm.

> (a) *OCGA § 9-11-12 (b) (6) Generally*. Georgia law provides that
>
> a motion to dismiss the complaint for failure to state a claim under OCGA § 9-11-12 (b) (6) should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation, punctuation, and emphasis omitted.) *McLeod*, 369 Ga. App. at 717-718. In that vein,

> minimum pleading requirements are found in OCGA § 9-11-8 (a) (2) (A), which requires that the complaint contain a short and plain statement of the claims showing that the pleader is entitled to relief, and

6

we have held that the touchstone is fair notice — "this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading."

(Citation omitted.) Id. at 718. Therefore, "[i]f, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied." (Citation, punctuation, and emphasis omitted.) Id. Through that lens, we turn to the statute at issue.

(b) *Scope of the Georgia RICO Act.* At the outset, we note that

[a] statute draws its meaning from its text. When we read the statutory text, we must presume that the General Assembly meant what it said and said what it meant, and so, we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) *City of Marietta v. Summerour*, 302 Ga. 645, 649 (2) (807 SE2d 324) (2017). Therefore, "[w]here the language of the statute is clear, unambiguous, and does not lead to any absurd or impractical consequences, [we are]

prohibited from construing the statute differently than the terms of the statute." *Aldrich v. City of Lumber City*, 273 Ga. 461, 464 (542 SE2d 102) (2001).

"The common and customary usages of the words [of a statute] are important, but so is their context." (Citation and punctuation omitted.) *City of Marietta*, 302 Ga. at 649 (2). To that end, "[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). "Legislative intent is determined from consideration of the entire statute; thus we consider a statutory provision not in isolation, but in the context of the other statutory provisions of which it is a part." *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." (Citation and punctuation omitted.) *City of Marietta*, 302 Ga. at 649 (2). Importantly

> [i]t is the duty of the [judiciary] to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature. *The construction must square with common sense and sound reasoning.*

8

(Citations omitted; emphasis supplied.) *Staley v. State*, 284 Ga. 873, 873-874 (1) (672 SE2d 615) (2009); see also *Catoosa County v. Rome News Media*, 349 Ga. App. 123, 134, n. 52 (825 SE2d 507) (2019) ("Courts may construe statutes to avoid absurd results; however, under our system of separation of powers[,] [c]ourts do not have the authority to rewrite statutes.") (citation and punctuation omitted). With these principles in mind, we next examine the statute at issue in this case.

(i) *Plain Language*. OCGA § 16-14-4 (a) states that "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, *to acquire or maintain*, directly or indirectly, *any interest in or control of any enterprise, real property, or personal property of any nature, including money*." (Emphasis supplied.) Concerning conspiracy, which Warner has alleged in this case, OCGA § 16-14-4 (c) provides:

> It shall be unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section. A person violates this subsection when:
>
> (1) He or she together with one or more persons conspires to violate any of the provisions of subsection (a) or (b) of this Code section and any one or more of such persons commits any overt act to effect the object of the conspiracy; or

9

(2) He or she endeavors to violate any of the provisions of subsection (a) or (b) of this Code section and commits any overt act to effect the object of the endeavor.[4]

"Pattern of racketeering activity" is defined as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents[.]" OCGA § 16-14-3 (4) (A). Relevant to this case, "racketeering activity" means "to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under the laws of this state involving . . . [f]alse statements and writings or false lien statements against public officers or public employees in violation of Code Section 16-10-20 or 16-10-20.1[.]" OCGA § 16-14-3 (5) (A) (xxii). Therefore,

[t]o establish a valid civil RICO claim, a plaintiff must show that the defendant violated or conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury to the plaintiff. Satisfying the proximate cause element of the RICO Act requires a plaintiff to show that his injury flowed directly from at least one of the predicate acts. This

---

[4] OCGA § 16-14-4 (b) is not at issue in this case.

10

burden is not met where a plaintiff shows merely that his injury was an eventual consequence of the predicate act or that he would not have been injured but for the predicate act.

(Citations and punctuation omitted.) *Hansford v. Veal*, 369 Ga. App. 641, 648 (1) (b) (894 SE2d 215) (2023). Having reviewed the plain language of the statute, we now turn to its context. See generally *Ford Motor Co. v. Cosper*, 317 Ga. 356, 359 (2) (893 SE2d 106) (2023) ("[W]e must examine the statute's plain language, viewing the statutory text in the context in which it appears. . . .") (citations and punctuation omitted).

(ii) *Context*. "The Georgia RICO Act is modeled after the federal RICO statute," *Kimbrough v. State*, 300 Ga. 878, 882 (3), n. 13 (799 SE2d 229) (2017), which itself was "enacted as Title IX of the Organized Crime Control Act of 1970." *Chancey v. State*, 256 Ga. 415, 416 (I) (349 SE2d 717) (1986). "The overriding purpose of the federal RICO statute is to deal with the problem of the infiltration of organized crime into all areas of American life through the money derived from its illegal endeavors." Id. "Similarly, the Georgia RICO statute was enacted because of 'a severe problem . . . posed in this state by the increasing organization among certain criminal elements and the increasing extent to which criminal activities and funds acquired as a result of

11

criminal activity are being directed to and against the legitimate economy of the state.'" (Punctuation omitted.) Id. (citing OCGA § 16-14-2 (a))[5]; see also Ga. Code Ann. § 26-3401 (b) (1980) ("The General Assembly declares that the intent of this chapter . . . is to impose sanctions against this subversion of the economy by organized criminal elements. . . ."); OCGA § 16-14-2 (a) (1997) ("The General Assembly finds that a severe problem is posed in this state by the increasing sophistication of various criminal elements and the increasing extent to which the state and its citizens are harmed as a result of the activities of these elements.").[6] OCGA § 16-14-2 (b) also states:

> The General Assembly declares that the intent of this chapter is to impose sanctions against those who violate this chapter and to provide

---

[5] The Court in *Chancey* cited the version of OCGA § 16-14-2 (a) in effect in 1986; that language was originally codified at Ga. Code Ann. § 26-3401 (a) (1980). 256 Ga. at 416 (I); see also Ga. L. 1980, p. 405, § 1.

[6] OCGA § 16-14-2 (a) has remained unchanged since its 1997 revision. See Ga. L. 1997, p. 672, § 1. To be sure, "the expression of legislative purpose in enacting Georgia's RICO [A]ct [concerning "organized crime elements"] is not an element of a civil cause of action under the [A]ct[.]" (Emphasis omitted.) *State v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (2) (372 SE2d 276) (1988); see also *Reaugh v. Inner Harbour Hosp.*, 214 Ga. App. 259, 265 (5) (c) (447 SE2d 617) (1994). It is, however, "the General Assembly's codified legislative intent, which we cannot ignore." *Emory Univ. v. Kennestone Hosp.*, 373 Ga. App. 114, 125 (2) (b) (ii) (a) (906 SE2d 854) (2024).

compensation to persons injured or aggrieved by such violations. It is not the intent of the General Assembly that isolated incidents of misdemeanor conduct or acts of civil disobedience be prosecuted under this chapter. It is the intent of the General Assembly, however, that this chapter apply to an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury. This chapter shall be liberally construed to effectuate the remedial purposes embodied in its operative provisions.

In short, "[t]he Georgia RICO Act was enacted by the Georgia legislature to impose criminal penalties against those engaged in an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury, and civil remedies to compensate those injured by reason of such acts." (Citation and punctuation omitted.) *Hansford*, 369 Ga. App. at 648 (1) (b).

(iii) *Analysis*. In this case, Warner's complaint identifies two false statement statutes — codified at OCGA §§ 16-10-20 and 16-10-20.1 — as the predicate acts which, if proven, would constitute two of the enumerated predicate acts under the Georgia RICO Act. See OCGA § 16-14-3 (5) (A) (xxii). But, in actuality, Warner's complaint is yet another volley in the parties' long-running domestic dispute. Federal courts routinely reject RICO claims within the context of domestic disputes. See, e.g.,

13

*Cohen v. Cohen*, 993 FSupp.2d 414, 423 (III) (S.D. N.Y. 2014) ("[D]omestic relations disputes are rarely the nebulae from which viable civil RICO claims coalesce."); see also *Bachi-Reffitt v. Reffitt*, 802 Fed. Appx. 913, 916-917 (6th Cir. 2020) (collecting cases); *Pataro v. Castellon*, Case No. 22-20866-CV-WILLIAMS, 2023 U. S. Dist. LEXIS 203871, at *11 (III) (A) (1) (S.D. Fla., Nov. 14, 2023) ("[T]he sort of fraud involved in hiding assets in connection with a divorce does not constitute a pattern of racketeering for purposes of RICO.") (citation and punctuation omitted); *Cohen*, 993 FSupp.2d at 422-423 (III) ("[I]n analyzing a [RICO] claim, courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.") (citation and punctuation omitted).

And while Georgia's RICO Act is broader than the federal RICO statute, see *Hansford*, 369 Ga. App. at 650 (1) (b), the Georgia RICO Act is not "as boundless as the sea[.]"[7] There is nothing in the plain language of the Georgia RICO Act, much less its context, to suggest that the Act may be warped so far beyond its original purpose of combating organized crime to apply to a festering domestic feud. Nor does such an

---

[7] William Shakespeare, *Romeo and Juliet*, act 2, sc. 2.

action, with its possibility of treble damages, "further RICO's goal of compensating victims and providing incentive for 'private attorney[s] general[]' to initiate actions against those in violation of the Act." *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 429-430 (614 SE2d 758) (2005). To the contrary, "many plaintiffs, rather than fostering RICO's mission as private attorneys general aiding public law enforcement, actually appear as private prospectors digging for RICO's elusive gold, and more often than not generating substantial costs rather than net gains to the public." *Gross v. Waywell*, 628 FSupp. 2d 475, 481 (I) (S.D. N.Y. 2009). Therefore, we conclude that extending the Georgia RICO Act to any garden-variety domestic dispute would lead to "unreasonable or absurd consequences not contemplated by the legislature" in defiance of "common sense and sound reasoning." (Citations omitted.) *Staley*, 284 Ga. at 873-874 (1); see also *Catoosa County*, 349 Ga. App. at 134, n. 52 (noting that "[c]ourts may construe statutes to avoid absurd results"). Accordingly, because the allegations in Warner's complaint "disclose with certainty that [she] would not be entitled to relief under any state of provable facts asserted in support thereof[,]"

15

*McLeod*, 369 Ga. App. at 718 (citation and emphasis omitted), we affirm the trial court's dismissal of Warner's complaint.[8]

(c) *Specific Intent to Commit Predicate Offenses*. In view of our decision in Division (b) (iii), we need not consider Warner's remaining argument that the trial court erroneously concluded that Warner could not demonstrate that the defendants

---

[8] As a result, we need not decide here where a line separates what claims are permissible under the Georgia RICO Act and what claims are not; we simply state that Warner's Georgia RICO Act claim is not permitted under the circumstances presented here.

Similarly, we need not decide whether the only compensatory damages for which Warner claimed relief in her complaint under the Georgia RICO Act — "peace, happiness, and feelings" damages, see OCGA § 51-12-6 — are even available under a Georgia RICO Act claim. Compare *Rock v. BAE Systems*, 556 Fed. Appx. 869, 872 (11th Cir. 2014) ("Recovery based on personal injury, including claims of emotional and mental distress, is not cognizable under RICO.") with *Reaugh*, 214 Ga. App. at 264-265 (5) (c) (noting that "[u]nlike the federal [RICO] act, [the Georgia RICO Act] does not limit damages to injuries to business or property" to hold that Georgia RICO Act did not preclude recovery for the physical personal injuries at issue); see also *Otero v. Vito*, Case No. 5:04-CV-211 (CAR), 2007 U.S. Dist. LEXIS 34053, at *4 (II) (A) (M.D. Ga., May 9, 2007) (citing *Reaugh* and noting that "the Georgia RICO Act, unlike its federal counterpart, authorizes the award of damages for injuries to the person, as opposed to strictly financial injuries"); but see *Cox. v. Mayan Lagoon Estates*, 319 Ga. App. 101, 109 (2) (b) (734 SE2d 883) (2012) ("[A] private plaintiff who wants to recover under civil RICO must show some injury flowing from one or more predicate acts. A plaintiff cannot allege merely that an act of racketeering occurred and that [s]he *lost money*.") (citation omitted; emphasis supplied).

knowingly and willfully filed false documents to support the predicate offenses under the Georgia RICO Act.

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*